Venard v. Cross.

---

GEORGE W. VENARD v. SAMUEL K. CROSS.

1. PUBLIC NUISANCE; *Private injury.*    An individual sustaining an injury
   from a public nuisance differing in kind from that sustained by the
   community in general, may maintain an action therefor.

2. HIGHWAY; *Service of Notices; Proof and record of Service..*    Proof of
   service of the notices provided by section four of the Road Act of 1864
   was not required to be filed, recorded or preserved, and a failure of the
   record to show such proof of service, does not avoid the record.

3. ———— *Report of Viewers.*    A road report signed by two viewers is
   sufficient.

4. MILL DAM ACT; *Right of flowage; Highways.* The right of flowing lands obtained by proceedings under the Mill Dam Act does not include the right to overflow or obstruct a highway.

5. ———— *Act Constitutional.* Chapter 66 of the General Statutes commonly known as the "Mill Dam Act," is constitutional and valid.

## *Error from Coffey District Court.*

ACTION brought by *Venard* against *Cross*, to enjoin defendant from flowing plaintiff's lands, and to abate defendant's mill dam. The petition stated that *Venard* was the owner in fee of certain lands, (describing them,) situated on Neosho river, and that across said river and on said lands there was a ford, and a public highway duly and legally established over said river at the place where said ford was upon said land; that said highway was his only means of ingress and egress to said land; that defendant *Cross* was the owner in fee of certain other lands, (describing them,) situated on said river, in said county, and below the lands of the plaintiff; that defendant had erected a dam of the height of ten feet across said river, on his own lands, by means of which dam the water was flowed back upon the lands of the plaintiff, and upon and over said ford and public highway, so as to render the same impassable. *Cross* answered, alleging that since the commencement of the action the defendant had obtained the right to flow the lands of the plaintiff by proceedings had under the Mill Dam Act, denying the flowing of the plaintiff's lands, and denying the existence of the public highway alleged in the petition. Plaintiff replied. The action was tried at the August Term, 1870. In the course of the trial the plaintiff offered in evidence, to prove the existence of the public highway mentioned in his petition, the record of roads, and record of plats and field notes of survey of roads for said county, which were objected to by defendant, because the record did not show that the persons who signed the petition for the establishment of said road were citizens and freeholders of said county, and residing in the vicinity of the proposed road, and also because the record *did* show that but *two* of the three viewers appointed by the

16—8TH KAS.

county board to view and locate said road appeared and acted—
which objections were sustained and said records excluded.
Thereupon the plaintiff proved by competent testimony,
*aliunde*, that more than twelve of the persons who signed the
petition for said road were citizens and freeholders of said
county at the time of signing such petition, and were residing
in the vicinity of said proposed road, and then the plaintiff
again offered the records in evidence, which were again objected
to by defendant, and excluded. Said records were admitted to
be regular in other respects. And afterwards, in the course of
the trial, the *defendant*, (over plaintiff's objection,) read in
evidence certain proceedings had under the "Mill Dam Act"
in 1869, and before the commencement of this action, in which
proceedings the name of the plaintiff did not appear, nor were
his lands mentioned, nor was any notice given to him. Defend-
ant, over plaintiff's objection, also gave in evidence certain
proceedings had under the said Mill Dam Act, subsequent to
the commencement of this action, and testimony tending to
prove service of notice on the plaintiff. The court found the
several issues of fact and law in favor of the defendant, and
rendered judgment, dismissing the petition; and plaintiff
brings the case to this court on error.

*Ruggles & Plumb*, for plaintiff in error:

1. The court erred in excluding the road record, and record
of plats and field notes when first offered by plaintiff.

The record itself showed that the county board were satisfied
that due notice of the presentation of petition had been given,
and the defendant admitted that the bond had been given as
required by law. The statute did not require that the county
board should enter of record that the signers to the petition
for the road were freeholders and residing in vicinity of pro-
posed road. (Laws 1864, pp. 213–214; 13 Minn., 131.) The
record of plat of survey and order opening road is sufficient
evidence of the legal establishment of a public highway. 12
Ohio St., 635; 13 id., 406; 2 How., 319; 15 Illinois, 543; 5
Ohio, 271; 15 Iowa, 214; 24 id., 363; 26 id., 225.

And certainly there was error in excluding the road record *after* the plaintiff had proved by Job Throckmorton, principal petitioner, that more than twelve of the persons who signed the petition for the road were citizens, freeholders of Coffey county at the time of signing such petition, and residing in the immediate vicinity of the proposed road. 6 Wis., 134, and cases above cited.

There was nothing in the objection that but *two* of the viewers acted in the location of the road. The error or irregularity, (if it was one,) occurred *after* jurisdiction had attached, and could not be taken advantage of in a collateral proceeding. 3 Iowa, 114; 15 id., 216. Besides, our statute makes the action of *two* of the viewers sufficient. Comp. Laws, 838, 4th clause of § 1; Gen. Stat., 999, 4th clause of § 1.

2. All the testimony given on part of defendant relating to proceedings under the Mill Dam Act was improperly received. The proceedings in the fall of 1869 where wholly irrelevant and immaterial; and all the proceedings were incompetent, in this, that the Mill Dam Act is unconstitutional and void.

It is well settled that an act of the legislature may be unconstitutional and void without transgressing any express constitutional provision. Sedg. Const. Law, 155 to 177; Smith's Const. Law, 267, et seq. And it is beyond all question that a legislative act is void if it violate any express constitutional provision. 1 Kent Com. 448; Sedg. Const. Law, 215; Smith's Const. Law, 313; 1 Cranch, 137. The act known as the Mill Dam Act is against common right, and the principles of Magna Charta, and is void irrespective of constitutional restrictions. 5 Webster's Works, 468; 11 New Am. Cyclopedia, 58, Art. *Magna Charta;* 2 Kent Com., 113; Smith's Const. Law, 267, § 136, et seq; 19 Wend., 659; 11 Minn., 496; 3 Dallas, 386.

The rights of the individual and of the public are correlative rights, and if the mill owner is not obliged by law to use his mill for the benefit of all who come, then he cannot acquire the right of flowage.

The act in question infringes §§ 18 and 20 of the Bill of Rights in the Constitution of Kansas, and is therefore void,

because it seeks to take private property for *private use* without the consent of the owner. Private property can only be taken when the use is a public one to which it is to be appropriated. 27 Mo., 373; 34 Ala., 311; 8 Ohio St., 346; 3 Barb., 47; 3 Wis., 465; Cooley's Const. Lim., 539.

The taking of the property of one citizen and transferring it to another, without his consent, is not a proper subject of legislation—and any statute which attempts to do this, or to authorize it to be done by others, either with or without compensation, is void. 27 Iowa, 28; 24 Wis., 89; 4 Hill, 143; 5 Paige Ch., 159, and authorities above cited.

3. The defendant's demurrer to the petition was properly overruled. The plaintiff shows in his petition a legal capacity to sue, because he alleges the dam flows his land, and also flows the public highway, which is his sole means of ingress and egress to that land. This allegation shows such a private injury to the plaintiff as enables him to sue for an infringement of a public right. *Craft v. Com'rs*, 5 Kas., 518; 18 N. Y., 155; 23 N. Y., 318; 9 Ohio St., 504.

*Martin, Burns & Case*, for defendant in error:

1. In support of the action of the district court in rejecting the record, we respectfully submit for the consideration of the court the following points: The board of county commissioners is a tribunal of special and limited jurisdiction: Gen. Stat., 256, § 16; id., p. 253, §§ 1, 3, 5; 12 Ohio St., 644; 13 id., 411. In order to support the judgments and proceedings of tribunals of this character, all facts necessary to confer jurisdiction in the particular case must affirmatively appear, or exist by necessary implication: 2 Ohio, 252; 7 Hill, 36; 12 Penn. St., 355; 3 Iowa, 114. Tribunals of this kind in performing duties imposed, or in executing powers granted, are held to the strict limits of their authority as conferred and prescribed by the statute. 13 Ohio St., 415.

We submit that the report of the viewers in this case is *void*, and not to be regarded as a report, for the reasons, that it is signed by only *two* of the three viewers; that no notice as

required by § 4 of the road act, was ever given, and this we regard as a *condition precedent* to their right to act; and that no *reasons* are given by the viewers, in their report, why such road should be established.    Laws of 1864, Ch. 112, § 3; 7 Ohio St., 19; 30 N. Y., 472.

2. It was not error to admit in evidence the record of the original proceeding by defendant to secure the right to erect and maintain his mill dam prior to the erection of the same. It could not have prejudiced any of the plaintiff's rights.  Even supposing its admission wrong, and it was only offered as a basis to support the subsequent proceedings of the defendant in making application to *raise his dam* in accordance with the requirements of §§ 15 and 16 of ch. 66, Gen. Stat.    In other words, the defendant's right to *raise* a mill dam depended on the fact that he had already built the same in accordance with the mill dam act, and these proceedings were offered to show that he had complied with the requirements of the law in that respect.

3. We next insist that the plaintiff cannot maintain this action for the reason, that the injuries and inconveniences complained of by plaintiff are such only as are suffered by him in common with every citizen in the community through which the road runs.    23 N. Y., 318; 6 Metc., 425; 31 Conn., 165; Hil. on Injunc., § 92; 5 Kas., 518.

The petition does not allege any individual or personal right, not common to others, and hence does not state facts sufficient to constitute a cause of action.

3. The Mill Dam Act is valid.    If the public interest can be in any manner promoted by the taking of private property, it must rest with the legislature to determine that question.  2 Pet., 251; 3 Paige Ch., 72; 2 Kent's Com., 410.

The appropriation of private property for mills and mill dams has been held to be for the public use; though it inured to the benefit of individuals, and where the case is such that it is proper to grant to individuals, or corporations, the power to appropriate private property, it is also competent to delegate the authority to decide upon the necessity for such appropria-

tion. Cooley's Cons. Lim., 532. 536; 6 How., 529; 21 N. Y.,
597; 14 Wis., 617; 2 Mich., 429; 26 Wend., 484; 33 Conn.,
532; 25 Mo., 515; 32 Penn. St., 177; 4 J. J. Marsh., 40; 1 T.
B. Mon., 58; 23 Pick., 220; 13 Iredell, 109; 3 Yerg., 41.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by the plaintiff in
the district court to abate a mill dam, and perpetually enjoin
defendant from maintaining it. Upon the final hearing judg-
ment was rendered for defendant, and the plaintiff brings the
case here on error.

Two grounds for relief are alleged in the petition; first, the
flowing by the erection of the dam of land owned by plaintiff;
and second, the flowing of a ford, across the Neosho River, so
as to make it impassable, upon which ford and across which
river was a public highway duly and legally established, and
plaintiff's only means of ingress and egress to his lands. To
the second of these grounds only, the first being unquestion-
ably good, need our attention be directed; and on its suffi-
ciency hinges the materiality of the testimony rejected. It is

1. Public nui-
sance, private
injury; pub-
lic and pri-
vate actions.
claimed "that the injuries and inconveniences
complained of by plaintiff are such only as are
suffered by him in common with every citizen in
the community through which the road runs," and that there-
fore, the injuries being to the public, the public only can
maintain an action to restrain them. That the injury com-
plained of is a public nuisance, an obstruction of the public
highway, is obvious. That where only that fact appears, no
private person can maintain an action to abate the nuisance,
is equally clear. Where a nuisance or a wrong is public, the
public must move to abate, prevent, or punish. When pri-
vate, the person injured may proceed. Often, however, an
injury is both public and private. Then relief may be afforded
at the instance of either the injured public, or the injured indi-
vidual. A larceny is committed. The public is wronged by
the infraction of its laws, and the disturbance of its security,
and it may prosecute for the crime. The individual is injured

by the loss of his goods, and he may sue to recover them or their value. Both actions may proceed at the same time. So is it with a nuisance. It may be a wrong to the community in general, and a particular injury to an individual. This particular injury to an individual enables him to maintain an action. Thus in *Hughes v. Heiser*, 1 Binney, 463, it was decided that where one dams a river that is a public highway, and the plaintiff coming down with rafts is prevented by the dam from descending the river, the interruption is actionable, for it is a consequential injury to his interest and rights of property. In the note to *Ashby v. White*, 1 Smith's Leading Cases, 364, it is said, "There are cases in which the act done is a grievance to the entire community, no one of whom is injured by it more than another in the *kind* of injury, though one may be much more injured than another in *degree*. In such a case the mode of punishing the wrong-doer is by indictment and by indictment only. Still, if any person have sustained a particular injury therefrom, beyond that of his fellow citizens (and differing in kind,) he may maintain an action in respect of that particular damnification. Thus, to use the familiar instance put by the text-writers, if A dig a trench across the highway, this is the subject of an indictment; but if B fall into it, then the particular damage sustained by him will support an action." Apply these principles to the allegations in the petition. It is alleged that the erection of the dam making the ford impassable obstructs the highway. So far it shows simply a wrong to the public, for which it alone can maintain an action. But the petition goes further and alleges that this highway is plaintiff's "only means of ingress and egress" to his land. Obstructing such highway, therefore, prevents his access to his lands. Here is disclosed a particular injury to plaintiff, one differing not merely in degree, but also in kind, from that suffered by community in general. It is not that he uses this highway more than others, but that the use is of a particular necessity to him, affording him an outlet to his farm. It is to him a use and a benefit differing from those enjoyed by the public at large. Obstruct-

ing the highway destroys that particular use and benefit. He therefore may maintain his individual action.

In support of his allegation of the existence of a highway duly and legally established across said ford, plaintiff offered the record of the proceedings of the board of county commissioners, which was rejected; and this brings us to a consideration of the second question presented, that is, the rejection of testimony. The record presented showed that in 1867 proceedings were had before the board of county commissioners of Coffey county which resulted in an order locating and opening for travel a public highway across said ford. To the validity of these proceedings several objections are made. The law in force at the time was Ch. 112 of the laws of 1864, entitled "An act in relation to Roads." The objections urged by counsel for defendant in error are, that the record fails to show, first, the giving of the *notice* required by § 4; second, the *view and survey* required by § 5, and third, the *report, plat and survey* required by § 6 of the statute just named. Other supposed objections to this record are discussed by counsel for plaintiff in error in their brief, but as they are not noticed by counsel for defendant in error we shall consider them as abandoned, and not stop to examine them. Let us look at the objections in the order they are made. And first, the record is silent as to the notice required by section four. It must be remembered that this is not a controversy between the public and an individual, the former seeking to take from the latter a portion of his land for public use as a new highway. In such case the individual may well insist that every step be shown to have been taken before he is compelled to surrender his property. Especially may he insist upon the proof of those requirements of the statute which are designed mainly for his protection. But in this case the controversy assumes a different phase. The highway is opened. The public are using it. The owners of the land appropriated, have consented to such use. And now an individual obstructs such highway and prevents its use. True, he does not attempt

*2. Highway; record; Statutory requirements.*

*3 Notice to owners of land.*

to appropriate the whole length of the highway. But a highway is very like a chain; one link gone, the rest is comparatively worthless. It is not the case of the public seeking to take private property for public use, but that of an individual seeking to take public property for private use. For although the mill-dam act can be sustained only on the ground that a public benefit is sought, yet a highway is public *per se*, and a mill public only by construction of law. Now if the owners of the land have consented to the appropriation of their land for purposes of a highway, and the public have used such land thus appropriated as a highway, it is with ill grace that a stranger comes in and claims that this, as it were, a quasi contract between the public and the owners of the land, is good in favor of neither. The fact of the existence of a highway may be proved without any record by evidence of acts of the owner equivalent to a dedication of his land to such use, and an acceptance thereof by the public. True, this action is between individuals; but it arises out of an obstruction by the defendant of that which the plaintiff in common with other citizens was using as a highway. And if the public and the owners of the land are satisfied to consider it one, a stranger has little standing in court when he says it is not. Here the public acting through the proper authorities located this highway and ordered it open for public travel. It was opened. The public were using it for travel. The owners of the land were not contesting, and by their claiming no damages were consenting to such location and use.

Said § 4 (ch. 112, laws of 1864; ch. 89, Gen. Stat., 1868,) requires two notices, one to the land-owners, and one to the viewers and surveyor of the time and place fixed by the county board for the survey. The object of the first is to give the land-owner an opportunity to make his claim for damages; and the other, to secure the meeting of the officers appointed.

Preserving and filing notice. It is made the duty of the principal petitioner to give this notice. It is nowhere made his duty to preserve such notice, or file proof of service anywhere. These notices are to be given after the county board has made

its order directing the survey. Prior to making this order the statute, in previous sections, provides for filing a petition, advertising notice thereof, and giving of bond. After the taking of these steps the county board acquire jurisdiction of the matter, and the right to proceed. How far a failure to comply with every subsequent requirement of the statute would affect the right of the board to compel the opening of the road it is immaterial to this case to determine, and we express no opinion thereon. If the land-owners have received no notice as required by section four, unquestionably they have a good claim against the county for damages. Perhaps also they might under some circumstances contest the location and opening of the road. But if they are satisfied, no one is authorized to claim or contest for them. More than that, it will be seen that the notice is only to be given to the land-owners, or their guardians, *residing in the county*. For aught that appears in the case, all the land-owners were non-residents of the county, unless it be Job Throckmorton, and he was principal petitioner and the one to give notice. The order of the county board fixed the time for the meeting of the viewers and surveyor. Notice to them of such time would be to secure there attendance. But if they attended without such notice, a failure to give it would hardly vitiate the proceedings. The report shows that two of the viewers and the surveyor attended. It nowhere appears that the third was ever notified or attended. If as a matter of fact he actually had no notice it would in many cases become a serious if not a fatal defect; but as we before remarked the law nowhere requires proof of service of notice to be filed, recorded or preserved; and we cannot insist that more be done than the law requires. The jurisdiction of the county board to proceed having once been shown, we must presume in favor of the regularity of the subsequent proceedings in matters where no record is required. The second objection we think not well taken. The report says that the viewers with the county surveyor did "proceed to view the route named in said petition, and have caused the route located by us to be noted by suit-

able marks." This shows sufficiently the making of the view and survey required by section five.

The third and last objection is also not well taken. The fact of the survey is shown by the report. The plat of the road and the field notes of the survey signed by the county surveyor are attached to the report. But it is claimed the report is void upon three grounds: "1st.–That it is signed by only two of the viewers. 2d.–That no notice, as required by section four of the road act, was ever given. 3d.–That no reasons are given by the viewers in their report why such road should be established." The second of these grounds we have already considered. The first is settled by the statute: " words giving a joint authority to three or more public officers or other persons shall be construed as giving such authority to a majority of them, unless it be otherwise expressed in the act giving the authority." Comp. Laws, ch. 188, § 1, 4th clause; Gen. Stat., ch. 104, § 1; *Norton v. Graham*, 7 Kas., 166. In regard to the third, the viewers in their report say the route is practicable, and recommend its adoption. This is a sufficient statement. No elaborate presentation of reasons *pro and con* is required.

We think the learned judge erred in rejecting the record. This would compel a reversal of the case, for even if the mill-dam act be constitutional, and the proceedings under it regular, the right thus acquired of flowing certain lands would not carry with it the right to obstruct a highway. The party obtaining the right of flowage takes nothing by implication. He is held to the letter of the bond. Nor is there any provision in the mill-dam act by which he can acquire the right to obstruct a highway. The purely public use of a highway is paramount to the *quasi* public purpose of a mill. Where the building of a dam overflows and obstructs a highway, the right to proceed with the dam can only be secured by proceedings vacating the highway, or by taking such steps, either raising the roadway or building a bridge, as may be necessary to secure the free and unobstructed use of the highway.

3. Report—when signed by two viewers sufficient.

4. Right to flow lands; its extent; highway.

The remaining question is as to the constitutionality of the mill-dam act, and the regularity of the proceedings had by defendant in error under it. This act may be found in the General Statutes, page 576. The first section, which contains the substance of the act reads as follows:

*5. Mill Dam Act is constitutional and valid.*

" Sect. 1. When any person may be desirous of erecting and maintaining a mill dam upon his own land, across any water course, and shall deem it necessary to raise the water by means of such dam, or occupy grounds for mill-yard, so as to damage, by overflowing or otherwise, real estate not owned by him, nor damaged by consent, he may obtain the right to erect and maintain said dam by proceeding as in this act provided."*

The remaining sections prescribe the steps to be taken. They provide for the appointment of commissioners, the assessment and payment of damages, and for appeals from the award of the commissioners. This act practically takes from one individual the use of his property and gives it to another. It is defended on the ground that thereby a power of great value is utilized, which otherwise would be wholly lost, and because the use by the latter is of far greater public benefit than that of the former. The flowing of water furnishes one of the strongest, most manageable, and most serviceable of natural forces, and has been resorted to in all ages of the world as one of the greatest helps to human industry. But flowing through the ordinary channel of a stream, it is comparatively an idle, valueless, wasted power. Only when its flow is checked, regulated, controlled, does this power become a helpful servant of man. This is accomplished ordinarily by the erection of a dam. But the building of the dam frequently results in the overflowing of land situated above the dam. The use of the land thus overflowed is sacrificed to the acquisition of the water-power. And when the land overflowed belongs to a party other than the builder of the dam, the former loses the use of his land that the latter may obtain the use of the water-

---

[* This section was amended by ch. 47, Laws of 1869, p. 132; but the amendment does not affect the question here decided.—Reporter.]

power. Of the benefits resulting from thus utilizing this power it is needless to speak. In some communities it has been and still is an incalculable blessing. Judge McCurdy, in *Olmstead v. Camp*, 33 Conn., 551, says: "It would be difficult to conceive a greater public benefit than garnering up the waste waters of innumerable streams and rivers and ponds and lakes, and compelling them with a gigantic energy to turn machinery, and drive mills, and thereby build up cities and villages, and extend the business, the wealth, the population, and the prosperity of the State." Here with us in Kansas, owing to the physical conformation of the State and the general use of steam as a motive power the comparative value of water power, secured by mill-dams, will probably always be slight. Yet in each particular instance the same reasoning which sustains the Mill-Dam Acts of Massachusetts and Connecticut will sustain that of Kansas. The benefits resulting to the community at large from thus utilizing an otherwise wasted power are so great that it is deemed fair to consider the securing of it a public purpose. Angell in his Treatise on Watercourses, § 487 says: "It seems however to be abundantly well settled that it is sufficiently for the public good; for the statutory law, of which we have given an account, has been too long engrafted in the jurisprudence of the states in which it has been enacted, revised and amended through a long course of legislation, and too steadily sustained by judicial sanction, to be now declared not to be within the eminent domain of the government. More especially should this long and uninterrupted public acquiescence be deemed conclusive, when it is considered that the line of demarcation between a use that is public and one that is strictly and entirely private, is a line not easy to be drawn." Pursuing the line of argument adopted by this court in the case of the *Board of County Com'rs of Leavenworth Co. v. Miller*, (the railway bond case, 7 Kas., 479,) we arrive at the same result. For at the time of the adoption of the constitution acts similar to this had been sanctioned by the legislatures, executives, and courts of many of the states, and almost universally upheld. And if the people

had not intended that the legislature of this State should exercise a like power they would have imposed a clear limitation. Without pursuing the discussion any further, we hold the Mill-Dam Act one within the scope of the legislative power granted by the constitution to the legislature, and not in conflict with the terms of that instrument. It is perhaps no more than right to say that, regarding this question simply in the light of principle, one member of the court at least, dissents entirely from the reasoning which would uphold the validity of this act.

In regard to the regularity of the last proceedings had by defendant under said act, it is sufficient to say that we consider them regular and conforming to the statute.

For the reasons heretofore given, the judgment of the court below will be reversed, and the case remanded for further proceedings.

All the Justices concurring.