State vs. Castle.

━━━━━━━━━━

STATE vs. CASTLE.

HIGHWAYS: LAYING OUT AND DISCONTINUANCE : OBSTRUCTION. *(1) Notice of meeting of supervisors.   (2) Adjournment of such meeting. (3) ESTOPPEL of state or town to deny discontinuance.   (4) What constitutes a willful obstruction.*

1. It is the settled law of this state (6 Wis., 134; 7 id., 124), that a notice by town supervisors that they will meet at a certain time and place *to take into consideration* an application to lay out a highway, is not a compliance with the statute which requires them to give notice of the time and place at which they will meet *to decide upon such application.*

2. Under the statute in force in March, 1876, the town supervisors had no power to postpone their decision upon an application for the laying out of a highway, beyond ten days after the time fixed in the notice for the first meeting to decide upon it, even if they could adjourn their proceed-

State vs. Castle.

ings from day to day within said ten days; and where the supervisors, after meeting on the day fixed in the notice, adjourned the meeting and the further consideration of the subject for more than ten days, this was in effect a denial of the application. Tay. Stats., 491–2, §§ 66–68.

3. The facts that the supervisors, after they had lost jurisdiction by their adjournment, agreed to discontinue an old road and open another, provided certain persons, including the defendant, owning the land over which the new road was to be laid out, would donate to the public the lands necessary therefor, and open the new road and put it in condition for public travel, without expense to the town, and that such persons fulfilled these conditions on their part, and that thereupon the old road, across defendant's land, was closed by him with the approval of the supervisors, do not *estop* the state or the town authorities from insisting that the old road continued to be a public highway.

4. One who obstructs a highway *in defiance of the order of the proper officers* in charge thereof, is liable to the penalty for a *willful* obstruction; although he may honestly believe the *locus* not to be a public highway, and although he may have been permitted by previous officers of the same kind to close the highway, upon their belief that it had been lawfully discontinued. *State v. Preston*, 34 Wis., 675, distinguished.

[RYAN, C. J., is of opinion that the question whether the obstruction was *willful* should have been submitted to the jury.]

APPEAL from the Circuit Court for *Dane* County.

The cause is thus stated by Mr. Justice TAYLOR, in his opinion as originally prepared:

This action was brought to recover a penalty for obstructing a public highway, and a verdict was rendered in favor of the plaintiff in the court below; and from the judgment entered thereon, the defendant appealed to this court.

The appellant relies upon the following assigned errors: 1. That the judge erroneously instructed the jury that the place where the obstructions were placed by the defendant was a legal highway. 2. That he also erroneously instructed them that the proceeding given in evidence did not vacate the old road. 3. That he refused to instruct them at defendant's request, that the state was estopped from maintaining the action against the defendant. 4. That he refused to allow the question whether the defendant willfully obstructed the high-

way, to be submitted to the jury. 5. That he refused to non-suit the plaintiff.

The evidence showed that the place where the obstructions were placed had been used as a public highway for more than twenty years previous to the bringing of the action, and had been traveled as such until a little over a year before its commencement. It also showed that on the 25th of February, 1876, defendant and others presented a petition to the supervisors of the town in which said road was situated, to discontinue it, and lay out another road, to be used in its place; that upon such petition said supervisors posted up notices that they would meet " at the house of *John Castle*, on the 11th day of March, 1876, at 10 o'clock A. M., for the purpose of taking into consideration the laying out of a public highway in said petition, commencing at a point in the center of the road at or near the house of Charles Nulty, on the line between sections 25 and 36 in said town; thence east on said section line until it intersects the road running between the towns of Burke and Westport; and to discontinue that part of the highway now used, commencing at the same point in the section line, and running through the corner of section 36 in said town;" that on the 11th of March, the supervisors met at the time and place mentioned in the notice, and adjourned the meeting, and any action upon the subject of the petition, until the 15th of April, 1876; and that, on the day last named, they met again at the house of said *Castle*, and there made and signed the following order:

" We, the board of supervisors of the town of Westport, met at the house of *John Castle*, in said town, at 10 o'clock in the forenoon, and, after hearing the arguments for and against said road, we proceeded to examine the said road, and did agree and determine to discontinue the road across the corner of section 36, as soon as the road is worked and made passable, being on the lands of *John Castle*, and laid out a road four rods wide on said line as above described, and being on the lands

of *John Castle*, in section 36, and John Doyle, John Lyons and La F. Koff, in section 25 of said town; all the parties agreeing to and with the board of supervisors of said town, that they will donate the right of way for said road free of expense to said town, as taking into consideration the benefit of said road.

"Dated at Westport, this 15th day of April, 1876.

"In presence of      JOHN H. TIERNEY,
 "JOHN CASTLE,      CASPER KLEIN,
 "JOHN A. DOYLE.     ED. FOLKERT,
             *Supervisors.*"

At the same time, *Castle* and the other owners of the land taken for the new road released all claim for damages against the town on account of lands taken for said highway. The evidence also shows that the defendant and others, without cost to the town, opened the new road so as to make the same fit for travel; and afterwards, in the month of April or first of May, 1876, the defendant, with the consent of the supervisors, closed up the old road running across the corner of section 36, being the same highway where it is alleged the obstructions were placed by the defendant. This road remained so closed until the latter part of May, 1877, when a new board of supervisors had been elected in said town; and they, believing that said road had not been legally vacated and that the same was still a public highway, directed the overseer of highways of the district in which the road was situated, to open the same. The overseer notified the defendant that he had been ordered by the board of supervisors to open the same, and requested him to remove the obstructions. This the defendant refused to do; and thereupon the overseer removed the obstructions and opened the road. The defendant immediately replaced the obstructions in the road, and closed the same up so that it could not be traveled, and publicly declared his intention to keep it closed against the public. Upon this state of the proofs, the circuit judge charged the jury that the place where the

obstructions were placed was a public highway, and that the defendant had willfully obstructed the same.

*Geo. B. Smith* and *F. J. Lamb*, for the appellant, argued, among other things, 1. That even if the *locus in quo* was a highway, the obstruction was not willful. *State v. Preston*, 34 Wis., 675; *Hubbell v. Goodrich*, 37 id., 86. 2. That if this were a suit between individuals, the doctrine of equitable estoppel would clearly be applicable; that the same doctrine has been applied against the land-owner, in favor of the municipality, state or public, in many cases where the proceedings for laying out highways were irregular (*Connehan v. Ford*, 9 Wis., 240; *Yates v. Judd*, 18 id., 118; *Karber v. Nellis*, 22 id., 215; *City of Dubuque v. Maloney*, 9 Iowa, 455; *Kile v. Yellowhead*, 80 Ill., 208); and that the doctrine is applicable to states and municipal corporations. Dillon on M. C., § 533; Herman on Est., § 233; Bigelow on Est., 464–6; *Gilbert v. Manchester*, 55 N. H., 298; *Comm. v. Pejepscut Prop.*, 10 Mass., 155; *Comm. v. Heirs of Andre*, 3 Pick., 224; *N. H., M. & W. Railway Co. v. Chatham*, 42 Conn., 465, 478; *People v. Van Rensselaer*, 5 Seld., 291; *Comm. v. Smith*, 4 Pa. L. J., 121 (2 Clark, 335); *People v. Lowell*, 9 Mich., 144; *Grant v. Davenport*, 18 Iowa, 179; *State v. Dent*, 18 Mo., 313; *People v. Society, etc.*, 2 Paine, C. C., 557–8; *U. S. v. Collier*, 3 Blatchf., 325; *Knox Co. v. Aspinwall*, 21 How., U. S., 539; *Stowe v. U. S.*, 19 Wall., 13; *County of Randolph v. Post*, 93 U. S., 313; *State v. Preston, supra; Kneeland v. Gilman*, 24 Wis., 39; *Goodrich v. Milwaukee*, id., 437; *Houfe v. Town of Fulton*, 34 id., 608; *Codner v. Bradford*, 3 Pin., 259.

For the respondent, a brief was filed by *Vilas & Bryant*, and there was oral argument by *Wm. F. Vilas*.

TAYLOR, J. That there had been a public highway at the *locus in quo*, previous to the time when the road was closed up in April, 1876, all parties admit, and the only question upon

that point was, whether the same had been lawfully discontinued previous to the time when the defendant renewed the obstructions in 1877. The proceedings of the supervisors, by which it is claimed the highway was discontinued, were void for two reasons.

*First.* The notice given was insufficient to give the supervisors jurisdiction to act in the matter. This court has so decided in *Babb v. Carver*, 7 Wis., 124; *Austin v. Allen*, 6 id., 134. It is too late to disturb these decisions.

*Second.* The supervisors lost all jurisdiction to proceed further on the petition, when they met on the 11th of March and adjourned to the 15th of April. At the time when these proceedings were had, the statute did not provide for any adjournment of the proceedings upon the petition; and under the law as it then stood, the supervisors were required to make a final order upon the subject of the petition, and file the same, within ten days after the time fixed in the notice for deciding upon the application; and in case of their failure to make and file their order within said ten days, the law declared that they should be deemed to have decided against the application. See secs. 56, 57, 58, ch. 19, R. S. 1858; Tay. Stats., pp. 491-2. We think there is no admissible construction of the statute by which it can be claimed that the supervisors had power to postpone their decision upon the petition beyond ten days after the time fixed in the notice for the first meeting, even though it might be held that they could adjourn their proceedings from day to day within said ten days.

This has been the acknowledged construction of the statute since its first enactment; and the legislature has given it that construction by the passage of ch. 376, Laws of 1876, providing that the supervisors may adjourn such hearing for not exceeding thirty days from the day fixed in the notice for the first meeting, and requiring notice of such adjournment to be given by posting notices as required for the first meeting.

The proceedings of the supervisors being void, the highway

State vs. Castle.

was not discontinued by them. The learned counsel for the appellant insist that the officers of the town, the people thereof, and the state, ought to be estopped from alleging that the *locus in quo* is a highway, and have submitted a very able and forcible argument in support of their position. The argument is based upon the evidence which shows that the supervisors agreed to close this highway, and open another on the section line, provided the defendant, and the other persons owning the land where the new highway was to be laid out, would donate to the public the lands necessary for the same, open the new road, and put it in a condition so that the public could travel it, without expense to the town; and that the defendant and others did donate the lands required for the new highway, and put the same in condition for the public travel, without expense to the town, and thereupon the road across the defendant's land was closed by him with the approval of the then town supervisors.

After a careful consideration of the reasons urged, and an examination of the cases cited, we are unable to hold that this unauthorized proceeding on the part of the supervisors estops the state or the town authorities from insisting that the *locus in quo* is a public highway.

The authorities cited to show that the land-owner who has received from the town the damages for his lands taken for a highway, is estopped from alleging that the highway was not regularly laid out, go upon the theory that an individual may dedicate his lands to the public for a public use, and that when he has made such dedication, and the public has accepted the same, he cannot recall it. An individual may dedicate his lands for a public highway without any consideration given by the public; and if the public accept the dedication and expend the public money thereon, it will bar the donor from revoking such dedication. Nearly all the other cases cited by the learned counsel were cases relating to the proprietary rights of a municipal corporation or of the state. In such cases, where

State vs. Castle.

the state or a municipal corporation is authorized to purchase or convey real estate or other property, it is governed by the rules applicable to individuals to a certain extent, and will be estopped by its grants and covenants whenever it would be inequitable to permit it to avoid the same, although such grant or contract may not have been made in strict conformity to law. So with the cases cited showing that when the law authorizes a municipal corporation to construct and issue its negotiable bonds in performance of such contract, they are to be governed by the rules applicable to individuals, and, where its bonds are held by purchasers in good faith, the municipality is estopped from questioning the regularity of the proceedings antecedent to their issue. These cases, however, all hold, that where the municipality makes a contract in the absence of any law authorizing the making thereof under any circumstances, the municipality is not bound, even though its negotiable securities be held by *bona fide* holders. The class of cases last referred to do not aid the appellant if he seeks to estop the state or town by contract, as there is no law in force which authorizes the supervisors of a town to discontinue a highway by contract with the parties interested. The cases of *Grant v. The City of Davenport*, 18 Iowa, 179; *The People v. The Township Board of Lowell*, 9 Mich., 144; and *Kneeland v. Gilman*, 24 Wis., 39, differ in some respects from the mass of cases cited; and yet they all relate to the property rights of the municipality, and were cases in which the municipality acted through its highest authorized agents; whereas in the case at bar it cannot be said that the supervisors, in the matter of opening, laying out or discontinuing highways, act for the town in any sense, except so far as they may bind the town, when their acts are authorized by law, to pay all the damages awarded to the owners in laying out and opening highways, and to open and keep in repair the highways so laid out and opened; and unless these officers proceed according to law in laying out a highway, the town can

neither be compelled to open the same, nor to pay the damages awarded to the owners of the land taken for the same.   Dillon on Corporations suggests very clearly the distinction between individuals and municipal corporations, and points out the cases in which they are to be treated as persons and subjected to the same rules of law which govern persons, and the cases in which they act as trustees of public trusts and are governed by different rules.   " Municipal corporations, as we have seen, have in some respects a double character, one public and the other private.   As respects property not held for public use or upon public trusts, and as respects contracts and rights of a private nature, there is no reason why they should not fall within the statute of limitations.  .  .   But such corporation does not own and cannot alien public streets or places, and no laches on its part or on that of its officers can defeat the right of the public thereto.   Yet there may grow up, in consequence, private rights of more persuasive force in the particular case than those of the public."   2 Dillon on Corporations, § 533.   This last suggestion was recognized and practically acted upon in the case cited in 18 Iowa, 179.   In volume 1, § 381, the same learned author says:   " The general principle of law is settled beyond controversy, that the agents, officers or even city counsel of a municipal corporation cannot bind the corporation by a contract which is beyond the scope of its powers, or entirely foreign to the purposes of the corporation, or which (not being in terms authorized) is against public policy.   This doctrine grows out of the nature of such institutions, and rests upon reasonable and solid grounds.   The inhabitants are the corporators, the officers are but the public agents of the corporation.  .  .   It results from this doctrine, that unauthorized contracts are void."   Again in § 382 he says:   " So a contract by a city to waive its right to go on with the laying out of a street, or not, as it might choose, is, it seems, against public policy; and it is void if it amounts to a surrender of its legislative discretion;  .  .   and a contract

will not be sustained which tends to restrain or control the unbiased judgment of public officers. But a promise by individuals to pay a portion of the expenses of public improvements does not necessarily fall within this principle; and such promise is not void as being against public policy."

In the case at bar, it is insisted by the appellant, and shown on the trial, that the road was discontinued by agreement of the supervisors with him and others interested, that if they would make a new highway without expense to the town, the old highway should be closed and the new one opened. It is at least questionable whether this contract would not have rendered both the discontinuance of the old road and the laying out and opening of the new one void, had the proceedings been entirely regular. It is probable that such agreement by the defendant and his other interested associates did bias the judgment of the supervisors as to the necessity of closing the one road and opening the other. It is pretty clear from all the evidence that the supervisors would not have discontinued the old road without the performance of this agreement on the part of the defendant. It can hardly be said, from all the evidence in the case, that the supervisors decided that the public good would be promoted by discontinuing the old road and opening the new one. If it would have been so promoted, then they should have made the order unconditionally, and not dependent upon the promise of the defendant. It might with propriety be insisted that the order of the supervisors discloses that the alteration of the highway was made for the convenience of the defendant and his associates, and not for the public good. The law presumes that the defendant knew that the supervisors had no lawful right to discontinue the highway in the manner pursued by them, and therefore he is in no position to insist that the public should be bound by their acts. In the case of a person acting with the agent of an individual, the law will not permit him to take any advantage of a contract which is made with such agent, when he knows, at the time

the contract is made, that such agent is acting without authority from his principal, unless it be shown that the principal, after full knowledge of such contract, has in some way ratified the same.

In the case at bar, it would seem that there was no ratification of the unauthorized acts of the supervisors of the town by the public, after the same had been done, either by permitting the transaction to remain unquestioned for a series of years (by reason of which the defendant might have expended large sums of money and acquired large pecuniary interests upon the strength of the status fixed by the acts of the supervisors), or in any other manner; but as soon as by law it was possible for the people of the town to remove the officers who had made the unlawful arrangement with the defendant, they removed them; and their successors, without delay, notified the defendant that they repudiated the unlawful transaction, and demanded that the original status of the parties should be restored.

Upon the whole case, we have no doubt but that the learned circuit judge was right in instructing the jury that the *locus in quo* was a highway at the time the defendant placed the obstructions therein, as proved upon the trial, and that the public was in no way estopped from alleging that fact as against the defendant by reason of the arrangement made with him by the former supervisors of the town.

The only other question in the case is, whether the learned circuit judge committed an error in charging the jury, as a matter of law, that the evidence showed that the defendant had wilfully obstructed the highway, within the meaning of sec. 101, ch. 19, R. S. 1858. The appellant's counsel insist that this was a question of fact for the jury, and should have been submitted to them upon the whole evidence; and they rely upon the case of *State v. Preston*, 34 Wis., 675, as sustaining their exception to that part of the charge of the circuit judge. It will be seen by an examination of that case, that the judges

State vs. Castle.

who supported the decision expressly declare that it is based upon the special facts of that case. See p. 687. And the late learned chief justice, in his opinion in that case, clearly intimates that had the case shown the facts which are admitted to exist in this case, his opinion would have accorded with the opinion of the circuit judge as given to the jury. After reciting the facts in evidence, or offered to be put in evidence, and concluding that those facts did not show a willful obstruction of the highway by the defendant, he goes on to say: "Neither do we think that it makes any difference that the action given to recover the penalty is in form a civil action. The question presented is the same as if it were recoverable by information or indictment, as by the statute all penalties for the sum of one hundred dollars or more must be recovered.

. . Nor do we consider the public authorities without a remedy to vindicate the rights of the public, and to determine the unlawfulness of the obstruction, in cases where the penalty prescribed by the statute is not recoverable. The overseers of the proper road district may cause the obstruction to be removed as provided by the statute, and thus put the landowner to his action to recover his damages, in which action the rights of the public may be adjudicated, and the unlawfulness, if such be its character, determined against the party erecting it." The facts upon which the court in that case held the obstructions not willful, were very nearly the same as the facts attending the first obstructions placed in the highway by the defendant in this case. The supervisors of the proper town had proceeded irregularly to discontinue the alleged highway, and had declared the same discontinued, and notified the defendant that he might close the same; and it was for such closing of the road upon the direction of the supervisors that the action was brought, without any subsequent direction to him to remove such obstruction, and without any subsequent order of the supervisors to the overseer of highways to remove such obstruction and open said highway.

Upon this state of facts the learned chief justice says: "The power of laying out, altering or discontinuing highways has, with one or two exceptions, been conferred exclusively upon the supervisors of the respective towns; and when they, acting as a board, either formally or informally, or with or without strict legal authority in the premises, notify the land-owner that no highway exists, and that he may lawfully erect his fence, no penalty can be recovered against him for such erection under the statute in question. An obstruction so created cannot be regarded as willful within the meaning of the statute, even under the mildest construction which can here be put upon that term." After this statement of the case and the conclusion of the court thereon, the remarks of the learned chief justice first above quoted follow.

The court having carefully confined the scope of that decision to the special facts of the case, it cannot be said to be decisive, if at all applicable to the facts of this case. The decision was made to rest upon the fact that the obstruction was placed in the highway at the direction and with the express authority of the supervisors of the town in which the road was situated, after they had taken proceedings to discontinue the same, and without any subsequent direction or notice from them to remove the obstruction so permitted to be placed therein by them. The facts in the case at bar show that after the defendant had obstructed the highway by the direction and permission of a former board of supervisors, after they had made an illegal and void order discontinuing the same, the next succeeding board of supervisors notified him that they repudiated the illegal acts of their predecessors in office, and directed the proper overseer of highways to remove the obstructions so placed therein, and open the highway again for public use; that the overseer removed such obstructions and opened the highway; and that, immediately thereafter, the defendant replaced the obstructions removed, and placed others therein, alleging his determination to continue to ob-

struct such highway against the authority of the then supervisors.

We think these facts clearly bring the case within the suggestion of the chief justice in the case above cited, as to the facts which would constitute a willful obstruction under the statute. If they do not, then no case can be made upon which a recovery can be had under sec. 101 of said ch. 19, unless the defendant admits that he knew the *locus in quo* was a lawful highway at the time he obstructed the same. If he can protect himself by simply alleging that he was advised by his attorneys that the *locus in quo* was not a highway, or by alleging that he in good faith believed it was not a highway, it would be impossible to convict under the law. The case relied upon does not go to that extent; and we are clearly of the opinion that the principle of that decision ought not to be so extended. We think that every person who undertakes to obstruct a highway which has been opened to the public for public travel for any considerable length of time, whether laid out and opened by the proper authorities or not, or a highway which the supervisors have laid out and opened, whether traveled for any length of time or not, takes upon himself the risk of the issue as to whether it is a public highway; and if, upon a trial in an action for the penalty, it turns out that the *locus in quo* is a highway by dedication or prescription, or by virtue of its having been regularly laid out and opened by the proper authorities, he can be convicted of willfully obstructing the same. When the citizen undertakes to act in hostility to the authority of the proper officers having charge of the highways of a town, and, in defiance of their orders, obstructs the same against the public travel, he takes the risk of showing that the place is not a public highway, and subjects himself to the penalty of the laws if he fails to show that the claim of the public officers is unfounded in fact. The claim of the public officers whose duty it is to see that the public highways are kept open for the public use, that the *locus in quo* is a public

highway, brought to the knowledge of the citizen, is sufficient to put him upon inquiry as to the fact; and if he obstructs such highway after such notice, and it is established that it is a highway, he is guilty of willfully obstructing the same, because the law presumes that if he had made proper inquiries he would have ascertained the fact of the existence of such highway.

We are of the opinion that there were no errors committed on the trial in the court below, and that the judgment of the circuit court must be affirmed.

RYAN, C. J. I concur with the majority of the court that the *locus in quo* was a public highway, and that the learned judge of the court below was right in so instructing the jury, as matter of law. But I cannot concur in the position that the learned judge was right in assuming, as matter of law, that the defendant's obstruction was willful, in the sense of the statute, and taking that question from the jury. It appears to me that it was a question of fact to be submitted to the jury, under proper instructions.

It was not a question of mere intent to do the act done, in which the law might assume that the party intended what he did. The statute does not give the prosecution for obstructing a highway, but for *willfully* obstructing it. A construction to the qualifying adverb is very fully given by this court in *State v. Preston*, 34 Wis., 675. The word is there distinguished from intentionally or designedly. A case is cited, with apparent approbation, making willfully synonymous with wantonly. Another authority is quoted, with strong approbation, commenting on the words knowingly and willfully, in these terms: "The first of these words does not, in common parlance or in legal construction, necessarily and *per se* imply a wicked purpose or perverse disposition, or indeed any evil or improper motive, intent or feeling; but the second is ordinarily used in a bad sense to express something of that kind,

or to characterize an act done wantonly, or one which a man of reasonable knowledge and ability must know to be contrary to his duty." And the court comes to this conclusion: "The word willfully, employed in the statute to characterize the offense, can not be construed, as counsel for the plaintiff contends, so as to embrace an obstruction erected in the most perfect good faith by the land-owner, believing that no highway existed at the place, and acting under the advice and direction of the proper officers charged by law with the general supervision and control of all the roads and highways in the town." It appears that the supervisors in that case had determined that there was no highway at the *locus in quo*, and instructed the defendant to put up his fence, obstructing what was a legal highway. And the judgment was reversed for the exclusion of evidence to establish those facts.

. In the present case, the supervisors, one year, ineffectually attempted to close the highway at the *locus in quo*, and licensed the defendant to fence it up on his own premises. The next year, the town authorities ordered the highway reöpened, and actually removed the defendant's fence, which he replaced; and the replacing of his fence was the willful obstruction complained of.

In *State v. Preston* the defendant was held so far justified by a misdirection of the supervisors; that is to say, that such misdirection absolved him from willfulness in the act. In the present case, the like misdirection would equally justify the defendant for first building his fence across the highway. And his willfulness appears to consist only in his trusting to the authority of one board of supervisors against the authority of another. The highway existed by prescription, and its validity was a mixed question of fact and law. And, as matter of fact, it is certainly open to debate whether, under the circumstances, his act was done wantonly, or was " one which a man of reasonable knowledge and ability must know to be contrary to his duty."

But if such conclusion be justifiable, as matter of fact, it appears to me to have been one for the jury to draw, not for the court. The intent to do an act actually done may sometimes be implied as matter of law. But when the question goes beyond mere intent to do the act, and rests upon the *animus* with which the act is done, the motive or understanding of the doer, to be gathered from the circumstances, it is a pure question of fact. In this case, as in others of the kind, the conclusion of fact would grow out of the surrounding circumstances in evidence. And, so far as this record discloses, the jury might have found either way.

If the defendant's willfulness is to be supported as a conclusion of law, it must go upon the assumption that the defendant was chargeable with knowledge of the law, that the *locus in quo* was a legal highway. The same rule would have applied in *State v. Preston*. And on this point, it seems to me that that case is in conflict with this.

*By the Court.* — The judgment of the circuit court is affirmed.