THE STATE OF KANSAS v. WILLIAM RAYPHOLTZ, *et al.*

HIGHWAY, *Liability for Obstructing.* Where one obstructs a public road or highway by the erection and maintenance of a mill-dam for the sole purpose of supplying water power to run and operate a grist, flour and exchange mill owned by him, and the back-water from the mill-pond formed by the dam renders the road unsafe for crossing, and practically impassable, and to the notification of the road overseer that the back-water from the dam and mill-pond totally obstructs the road, insolently answers the road overseer that "if he wants the water removed, to warn out his men, and dip it out with buckets," *held,* such a person is liable to the penalty for a willful obstruction of the public road, under the provisions of § 17, ch. 89, Comp. Laws of 1879.

### *Appeal from Sumner District Court.*

FEBRUARY 27, 1884, the following complaint, (omitting caption and verification,) was filed before D. N. Caldwell, a justice of the peace in and for the city of Wellington, in Sumner county:

"Geo. W. Peters, of lawful age, being first sworn in due form of law, on his oath says, that on the 25th day of October, 1883, in the county of Sumner and state of Kansas, William Raypholtz and Scott Raypholtz, then and there being, did then and there unlawfully and willfully obstruct a certain public road leading from the southeast corner of section thirty-six, in township thirty-four south, of range two, west of the 6th principal meridian, and the northeast corner of section one, in township thirty-five south, of range two, west of the 6th principal meridian, along the section line between sections thirty-five and thirty-six, in township thirty-four south, of range two, west of the 6th principal meridian, and sections one and two, in township thirty-five south, of range two, west of the 6th principal meridian, in said county, to the southwest corner

of section thirty-five, in township thirty-four south, of range two, west of the 6th principal meridian, and the northwest corner of section two, in township thirty-five south, of range two, west of the 6th principal meridian, in said Sumner county, where said road crosses Chikaskia river in said county, by placing a certain dam in the said river below the place where the said road crosses the said river, and maintaining said dam and thereby causing the water in said river to flow back and rise in said river upon and over the place where said road crosses said river, to such a depth as to render and cause the said road to be impassable at and upon the aforesaid crossing of the said river; contrary to the statute in such case made and provided, and against the peace and dignity of the state of Kansas. GEORGE W. PETERS."

Trial thereon was had before the justice on March 17, 1884. After all the evidence was introduced and the cause submitted, the justice took the case under advisement until March 22, 1884, on which day he rendered judgment against the defendants, finding them guilty as charged in the complaint, and adjudged them to pay a fine of $20, together with the costs of prosecution taxed at $61.95, and to be committed to the jail of Sumner county until the fine and costs were paid. On March 22, 1884, an appeal bond was filed by the defendants. Trial in the district court, at the April Term, 1884. A jury was waived, and the case submitted to the court on an agreed statement of facts, which is as follows:

"And thereupon it is mutually agreed by and between the parties to this action that the facts shall be taken, considered and held as proven, to wit:

" 1st. On behalf of the state, that the road mentioned in the complaint filed herein was at the time set forth in said complaint, and for a long time prior thereto had been, and now is, a public road and highway.

" 2d. That the dam mentioned in said complaint was constructed by defendants at the time mentioned in the complaint, and has ever since existed and now exists.

" 3d. That prior to the construction and maintenance of said dam by defendants, the water in the Chikaskia river where the same crosses said public road and highway was of an average depth of eighteen inches and no more, and that at said point

on said road said river was ordinarily easily and safely fordable and passable by the traveling public.

"4th. That ever since the erection and maintenance of said dam by defendants, the average depth of water in said river at said point has been and is about four and a half feet, which depth of water has rendered the river at said point unsafe for crossing by the traveling public, and that said road has become and is thereby so obstructed at said point as to be practically impassable.

"5th. That the change in the depth of water in said river was and is wholly caused by the erection and maintenance by defendants of said dam.

"6th. That at the time of the erection of the dam, the defendants knew that said road was and for a long time (seven or eight years) had been generally and largely traveled by the public as a public road and highway, and that all the landowners on and through whose land said road was so traveled acquiesced in the use thereof by the public aforesaid.

"On the part of the defendants:

"1st. That said dam was and is erected and maintained on the lands of defendants about one mile, by the course of the Chikaskia river, below where the river is crossed by said road.

"2d. That said dam was and is erected and maintained by defendants for the sole purpose of supplying water power necessary to run and operate a grist, flouring and exchange mill by them erected, owned and operated on their said land adjacent to said dam and in fact attached thereto."

It was also further agreed by the parties, as follows:

"That immediately after the completion of said mill-dam by the defendants they, the defendants, for the purpose of ascertaining the depth of water in said mill-pond and in said river at various places and distances above the dam, went up the river in a boat from the dam to a point on the river above the crossing of the road in the complaint mentioned and described, and by means of actual measurement ascertained that at the crossing of the road the dam had raised and increased the depth of water in the river at least three feet over and above what it had been before the dam was erected. That prior to the commencement of this action the road overseer of the road district in which is located the aforesaid crossing of said road on said river, notified the defendants that the backwater of and from their aforesaid dam and mill-pond totally obstructed said road; that the defendants said to the road over-

seer if he 'wanted that water removed, to warn out his men (or hands) and dip it out with buckets.'"

The court found the defendants guilty as charged. They thereupon filed a motion for a new trial, which was overruled. They then filed a motion to vacate and set aside the findings of the court, which was overruled. They next filed their motion in arrest of judgment, which was also overruled. Each of the defendants was adjudged to pay a fine of $50, and one-half the costs of the prosecution, and both to be committed to jail until the fine and costs were paid. The defendants appeal to this court.

*McDonald & Parker*, and *Isaac G. Reed*, for appellants.

*W. A. Johnston*, attorney general, and *E. A. Austin*, for The State; *J. T. Herrick*, county attorney, and *Thomas George*, of counsel.

The opinion of the court was delivered by

HORTON, C. J.: The question in this case is, did the appellants willfully obstruct the road within the meaning of § 17, chapter 89, Comp. Laws of 1879? This section reads:

"If any person shall willfully demolish, throw down, alter or deface any milestone or guideboard on or at the forks of any roads, or shall willfully obstruct any such road by any means or in any manner whatever, every person so offending shall on conviction be adjudged guilty of a misdemeanor, and be punished by imprisonment in the county jail not exceeding three months, or by fine of not less than twenty nor more than one hundred dollars, or by both such fine and imprisonment, which fine shall be paid by the officer receiving the same, into the county treasury for school purposes. And every person obstructing any such road as aforesaid, shall also be liable in a civil action for all damages sustained by any person who has in any manner whatever been damaged by reason of such obstruction."

As it was admitted by the agreed statement of facts that the road obstructed was and for a long time had been and now is a public road and highway, and that the appellants knew at the time of the erection of the dam that the road was, and for

a long time (seven or eight years) had been generally and largely traveled by the public as a public road and highway, in our opinion the statute brings the road fully within its provisions. Although the dam was erected and maintained for the sole purpose of supplying water power to run and operate a grist, flour and exchange mill owned by the appellants, they acquired no right by the erection of the dam for such a purpose to obstruct the highway either with their dam or by the flowage of water.

"The purely public use of a highway is paramount to the *quasi* public purpose of a mill. Where the building of a dam overflows and obstructs the highway, the right to proceed with the dam can only be secured by proceedings vacating the highway, or by taking such steps, either raising the roadway or building a bridge, as may be necessary to secure the free and unobstructed use of the highway." (*Venard v. Cross*, 8 Kas. 259.)

It is claimed, however, that as the mill was not built with any intent or purpose to obstruct the road, or in other words, that in the absence of evidence showing that the appellants knew, or at least had reasonable grounds for knowing, the erection of a dam would cause the water in the river to flow back and be of such a depth that the river would not be fordable, they cannot be convicted of willfully obstructing the road by the construction of the dam; and it is claimed there must be evidence of evil intent or bad purpose before the appellants can be convicted. In this connection, the case of *The State v. Preston*, 24 Wis. 603, is referred to as supporting this claim. In that case, the obstruction was placed in the highway at the direction and with the express authority of the supervisors of the town in which the road was situated, after they had proceeded to discontinue the same. No direction or notice was given from them to remove the obstruction so permitted to be placed there, before the institution of the action. The court, in that case, carefully confined the scope of the decision to the special facts of the case. That decision, therefore, is not decisive.

Subsequently to the decision of *The State v. Preston*, supra,

the supreme court of Wisconsin decided that "one who obstructs a highway in defiance of the order of the proper officer in charge thereof, is liable to the penalty for a willful obstruction, although he may honestly believe the *locus* not to be a public highway, and although he may have been permitted by the previous officers of the same kind to close the highway upon their belief that it had been lawfully discontinued." ( *The State v. Castle*, 44 Wis. 670.)

The record shows that the appellants, immediately after the completion of their dam, for the purpose of ascertaining the depth of the water in the mill-pond and in the river at various places above the dam, went up the river in a boat from the dam to a point on the river above the crossing of the road, and by means of actual measurement ascertained that at the crossing of the road the dam had raised and increased the depth of water in the river at least three feet over and above what it had been before the erection of the dam. Prior to the erection of the dam, the water in the Chikaskia river, where the same crosses the public road, was of the average depth of eighteen inches; and the road was ordinarily safely fordable. After the erection of the dam, the average depth of water was four and one-half feet, which has not only rendered the crossing of the road unsafe, but practically impassable.

The record shows further, that prior to the commencement of this action, the road overseer of the district in which is located the crossing of the road on the river, notified the appellants that the back-water from their dam and mill-pond totally obstructed the road. In answer to this notice, the appellants stated to the overseer that "if he wanted the water removed, to warn out his men and dip it out with buckets." The appellants therefore not merely obstructed the highway, but continued to obstruct it in defiance of the order of the proper officer in charge thereof, and are liable to the penalty for a willful obstruction. If the term "willful" is construed only to mean designedly and purposely, then upon the agreed facts, the appellants are guilty. If we give to it greater strength, and say that willful in this connection denotes "gov-

erned by a will; without yielding to reason; obstinate; stubborn; perverse; inflexible," then the appellants are guilty. And if we go further, and say that in order to convict the appellants of willful obstruction, they must have committed an act "which a man of reasonable knowledge and ability would know to be contrary to his duty," then we must say that they are guilty, because, with the knowledge that they had obstructed the road, they insolently answered the notice of the road overseer, and in defiance of his order continued to obstruct the public road. (*The Territory v. Taylor*, 1 Dak. 47; *Fearnley v. Ormsby*, 4 C. P. Div. [Eng.] 136.)

The judgment of the district court will be affirmed.

All the Justices concurring.