No. 28,937.

H. P. BANISTER, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

(282 Pac. 751.)

Opinion filed December 7, 1929.

*William R. Smith, Owen J. Wood, Alfred A. Scott, Alfred G. Armstrong,* all of Topeka, and *J. E. Torrance,* of Winfield, for the appellant.

*O. Renn, George Templar,* both of Arkansas City, *L. D. Moore* and *H. O. Janicke,* both of Winfield, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: In this action the plaintiff seeks to recover $3,000 damages against the defendant railway company for closing and obstructing the use of Birch street in the city of Arkansas City, over the railroad crossing, and thus depriving the plaintiff of the only accessible and practical means of ingress and egress to and from his three lots on the north side of Birch street, on which he has two dwelling houses. He alleged in his petition that the defendant railway company entered into some sort of a contract or agreement with the city to have the crossing on Birch and other streets vacated, agreeing to construct two subways for the city, which would enable the defendant company to extend its switch yards and have additional facilities. The defendant answered by general denial and also specially pleaded the passing of the two city ordinances, one dated May 5, 1925, vacating the crossing at Birch and other streets in the city, ordinance No. 627; the other dated July 22, 1925, providing for the construction of the two subways, ordinance No. 639. The case was tried to a jury, which rendered a verdict for plaintiff for $2,250.

The court instructed the jury that it is admitted that the city vacated that part of Birch street that crossed the defendant's right of way, and that the defendant thereafter, in November, 1926, closed the same.

The defendant appeals and urges its grounds for reversal and reasons why plaintiff should not recover, under two headings as follows:

"(1) Birch avenue was not vacated or closed by the railway company, but by the city.

"(2) There was no obstruction of ingress and egress to and from plaintiff's property by the vacation and closing of Birch avenue across the right of way of the railway company, and therefore he suffered no special injury different in kind or degree from that sustained by the public generally."

Under the first subdivision it is earnestly contended by the appellant that even if the plaintiff may have been deprived of reasonable access to and from his lots on Birch street by the closing of the Birch street crossing over the defendant's tracks, the defendant railway company was not liable therefor. It must be conceded that

when the city by ordinance vacated this crossing on May 5, 1925, that act itself returned this property to private use. On that date the rights of the public in such crossing were terminated. No question has ever been raised as to the validity of the ordinance, and none is raised at this time. The ordinance was complete in itself and became so immediately upon its publication. It required no outside action or force to put it into effect. That crossing was as completely closed and vacated in May, 1925, as to the rights of the public, including the plaintiff, as it was in November, 1926, or is now. The fact that the defendant placed posts across the street and within its own right of way served no purpose except to prevent trespassing thereon. If the city vacates an alley through the block which I own and a year and a half thereafter I place a fence across the two ends of it, when was it vacated, and by whom? Appellee apparently recognized this generally conclusive feature of vacation when at great length he pleaded a contract or agreement between the city and the defendant railway company, setting forth the benefits received by the railway company in the way of extending its yards and adding other facilities. Appellee argues that by reason of receiving such benefits and facilities, including those in connection with the two subways a few blocks on either side of Birch street, it becomes liable to him for the damage he has sustained by obstructing his ingress and egress. Suppose Birch street had been vacated not only across the railway right of way but also to the west edge of that block past one lot owner on the north and one on the south. These lot owners would have acquired title to the middle of the vacated street and to that extent would have been benefited. Under such circumstances could plaintiff have maintained his action against them for damages for the obstruction complained of? They did not vacate the street, but they received the benefit of additional land. In this connection it is not claimed there was any change made at this crossing. It is said that it is in the same condition and situation as it has been for many years. Not a thing different there except the vacation and closing of the crossing. It will be observed in this connection that in many of the cases cited where damages were asked or allowed, some change or improvement had been made by the railroad company which particularly affected or disturbed the plaintiff, and for that obstruction or inconvenience he sought compensation and not for the vacation or closing of the street or alley. Another distinction readily observable in the cases cited

is that many of them are injunction suits to restrain and enjoin the closing which is directed against the party occupying or using the closed street. An early case along this line is that of *Heller v. A. T. & S. F. Rld. Co.*, 28 Kan. 625, decided by Justice Brewer, in which an injunction against the defendant was sought to restrain the railroad company from closing certain streets so as to enlarge its yards at Topeka after the city council had by ordinance vacated them. There was no question as to the railroad company being the proper party defendant to test out the equitable question, notwithstanding the passing of the ordinance. In that case it was said:

"The legislature as the representative of the public, has plenary power over streets and highways, and as a general rule, full discretion as to opening, improving, and vacating the same.

"While equity will interfere in some cases at the instance of private real-estate owners to restrain the attempted vacation of a road or street, yet it will interfere only when such owners have a special interest therein, and their property would be directly injured by the vacation." (Syl. ¶¶ 1, 2.)

Another case where the legislature vacated certain streets in an addition to the city of Wichita, an injunction was granted an aggrieved party against the owner of the south half of the block in which the plantiff's property was located restraining him from closing the streets which had been vacated around the south part of that block. In effect the court concluded that the act of the legislature as to this particular feature was inequitable, and by the injunction prevented it from going into operation. (*Highbarger v. Milford,* 71 Kan. 331, 80 Pac. 633.)

In the case of *State v. Railway Co.*, 81 Kan. 430, 105 Pac. 704, the railroad was made a defendant in a mandamus action to enforce strict obedience to an order of the board of railroad commissioners which was in apparent conflict with a city ordinance with reference to the laying of tracks in the streets.

In many cases the equitable rights of lot owners feeling aggrieved by the vacation or obstruction of streets have been determined in injunction actions brought against the city vacating the same or permitting the obstructions, among which are the following: (*City of Belleville v. Hallowell,* 41 Kan. 192, 21 Pac. 105; *City of Leavenworth v. Douglass,* 59 Kan. 416, 53 Pac. 123; *Bissey v. City of Marion,* 104 Kan. 311, 178 Pac. 611, the last being a mandatory injunction.

Appellee relies particularly upon the following Kansas cases in

support of his theory that the railway company is liable for the vacation of this street crossing: *L. N. & S. Rly. Co. v. Curtan,* 51 Kan. 432, 33 Pac. 297; *Railway Co. v. Armstrong,* 71 Kan. 366, 80 Pac. 978; *Highbarger v. Milford,* 71 Kan. 331, 80 Pac. 633; *A. & N. R. Co. v. Garside,* 10 Kan. 552; *C. B. U. P. Rld. Co. v. Twine,* 23 Kan. 585; *C. B. U. P. Rld. Co. v. Andrews,* 26 Kan. 702; *City of Leavenworth v. Douglass,* 59 Kan. 416, 53 Pac. 123; *Heller v. A. T. & S. F. Rld. Co.,* 28 Kan. 625; *Campbell v. City of Wichita,* 101 Kan. 817, 168 Pac. 833.

The first case cited is particularly strong in support of his theory, but it is distinguishable in this, that the damages claimed were occasioned by the construction of a building and high stone wall across the alleys which were made in pursuance of the ordinance of the city granting permission, to that extent vacating the alleys for the benefit and at the request of the railway company. It was there held, "No license or consent from the city will exempt the company from liability to the owner for placing an obstruction across the alley which practically excludes access to the lot for the ordinary purposes for which an alley is used by an owner" (*L. N. & S. Rly. Co. v. Curtan,* supra, syl. ¶ 3), plainly showing that the damages were based upon the doing of something by the company other and apart from the use of the ground as granted by the city council. The permanency and lasting character of the improvements constructed by the defendant were considered as well as the question of ingress and egress by reason of the obstructions of the alley.

In the Armstrong case, *supra,* an ordinance was passed granting permission to the railway company to contruct a viaduct and make the approaches in a certain manner. These approaches were made by the defendant company and extended past the alley in the rear of and some distance along the plaintiff's property in front of his residence, and for the construction of this approach he complained of being deprived of access to the rear of his property by way of the alley, which was something that the defendant had done in the way of construction work for its own benefit after being given permission by the city to do so. That was held to entitle the plaintiff to recover damages.

The case of *Highbarger v. Milford,* supra, was referred to above as being an injunction case and not one for damages.

The earliest case cited is *A. & N. R. Co. v. Garside,* supra, where the owner of a lot in Atchison fronting on an open space dedicated

to the city, and known as the levee, sued the railroad company for damages for injury to his business by the building and operating of a railroad along the levee in the public highway in front of his lots, which he claimed constituted an obstruction to travel in the street, thereby depriving him of the use of the street and rendering access to his lots dangerous. This was after the city had granted the railroad company permission to construct its road along the levee. The court said there were four kinds of damages possible under such circumstances, and after defining the third kind as follows: "third, damages for illegal blocking up and obstructing said levee, and for other acts done illegally or in an improper manner" (p. 566), held, "The plaintiff may, we think, recover for the third kind of damages. But before he can do so he must show, among other things, that the levee is a street or highway, as he has alleged; that the railroad company wrongfully and unnecessarily blocked up and obstructed the said street or highway, and that the plaintiff received actual injury from such obstruction." (pp. 567, 568.)

The first paragraph of the syllabus in the case of *C. B. U. P. Rld. Co. v. Twine,* supra, shows that it, too, related to damages arising out of something done by the railroad company which caused the injury to the plaintiff, aside and apart from the action of the city in granting permission to use the streets.

"While a railroad company may, when licensed by the proper authorities, occupy a street or alley with its tracks, yet if in laying down such track it so changes the established grade, or in any other manner so lays its track as to permanently obstruct access to an adjoining lot, or if it unnecessarily and unreasonably leaves its cars standing on the track so as to interfere with approach to the lot, the lot owner may recover damages therefor, and a petition which in general terms charges such wrongs is good as against attack made simply by objecting to the admission of testimony." (Syl. ¶ 1.)

The Andrews case, above cited by appellee, was another one where a railroad track was laid in an alley after obtaining permission from the city to do the same. The court stated the claim of the plaintiff as follows:

"The wrong committed by the defendant, and for which the plaintiff claims damages, was in constructing one of the sidetracks of its road through the alley south of the plaintiff's lots, and thereby so obstructing the alley that it could not any longer be used as an alley." (*C. B. U. P. Rld. Co. v. Andrews,* 26 Kan. 702, 708.)

The next case in the list above given, as cited by the appellee, is the Douglass case in 59 Kansas, also referred to above as being an

injunction case instead of one for the recovery of damages. It also involves construction work by the railroad after the granting of permission by the city, and the action is against the city to enjoin the further construction as a nuisance. The rights of parties in such matters are fully considered and the first paragraph of the syllabus is as follows:

"The location of union depots and the closing and vacation of streets in cities are within legislative control; and where, in pursuance of legislative authority, a city of the first class provided for the location of a union depot over a public street, and at the same time closed and vacated that portion of the street upon which the union depot was to be constructed, stipulating and requiring that the union depot company should purchase a strip of ground a few feet away and dedicate it as a public street, as a substitute for the one closed and vacated, and the company then proceeded to perform the conditions, and to erect the union depot in accordance with the authority conferred and the requirements made, the union depot so erected upon and over the vacated street, cannot be regarded as a nuisance subject to be enjoined or abated at the suit of an owner of property situate in the vicinity of such union depot." (p. 416.)

The Heller case next cited has herein been described as an injunction case from which quotations have been given above, in which case the injunction was denied the lot owner although the diversion of the travel by reason of the closing of certain streets, to enable the railroad to enlarge its yards, was alleged to be ruinous to the mercantile business of the plaintiff.

The last case in the list above cited is the Campbell case, in 101 Kan. 817, a damage case against the city and railway company, which was decided upon a question of the statute of limitations, but the facts stated show it was based upon the construction work of the railway company upon the street, thus obstructing it after it had been vacated by the city. The second paragraph of the syllabus is as follows:

"When the street, by means of which a property owner has ingress to and egress from his property, is by ordinance vacated for the benefit of railroad companies for the purpose of constructing thereon an elevated structure for railroad tracks to a union station, and such ordinance has been accepted by the beneficiaries, and the work of construction begun, and the city has put up a sign 'Street closed, ordinance No. 4066,' held, that a cause of action has accrued for the permanent appropriation of such means of ingress and egress and the two-year statute of limitations has begun to run."

We are not concerned in the case at bar with any question of the statute of limitations, but we are observing that in this and substan-

tially all cases cited by both parties the damage is based upon something done by the defendant railway company after the vacation of the street or the granting of permission to build or construct buildings or tracks on such street. The following language in the opinion may help us to determine by what act a street is vacated, whether by the ordinance or by some subsequent construction of a physical barrier.

"While there is some dispute in the testimony as to just when the legal barricade constituted by the ordinance and its acceptance was reënforced by an actual physical obstruction, there seems to be no dispute that on September 9, 1912, the actual work was begun and a sign put up and the street marked 'Street closed, ordinance No. 4066.' This was a permanent appropriation and the subsequent completion of the superstructure simply added a physical to the legal barrier. At this point of time, when, the ordinance having been enacted and accepted, the actual work of constructing the barrier was begun and the public were notified by the posting up of a sign that the street was vacated, the plaintiffs' cause of action accrued." (p. 821.)

In this case the plaintiffs were impliedly held to have a right to recover damages, except that the action was barred by the two-year statute of limitations. It also embraced the theory of the appellee as to a benefit accruing to the railway company, for in that case the ordinance contained these words: "vacated and closed for the use and benefit of said railway company."

The appellee in this case seeks to show such benefit to the defendant by the closing of streets at this and other crossings and the agreement for the construction of the two subways and for extending the yards. That benefit may be admitted or implied, but does that constitute a compensation to the defendant to make it liable for damage to one whose lots are blocks away from the construction contemplated? None of the construction described or the extension of yards is near his property. His injury arises from the closing of this street crossing over the railway tracks, where no change or improvement of any kind whatever has been made or is contemplated. Any landowner is benefited at least to the extent of the additional abutting land acquired by the vacation of the street, and a railway company is further benefited by being relieved of the liability of the inherent danger of loss of life and property at the crossing by its being closed. On the other hand, it is said in a number of cases that the vacating of a railroad crossing by a city is in the interest of public safety. Even if the two ordinances are considered as constituting a contract between the city and the railway company, it

would be no more than what was contained in the Wichita ordinance where it so stated the acceptance of it as to constitute a contract, or if it were shown and admitted that the defendant railway company received great financial gain by the enactment of the ordinance vacating the crossing, the lot owner's claim for damages must stand on its own basis of right to recover because of something done by the defendant to obstruct his access. He is not in any way connected with or concerned in the extension of the yards or the building of the subways. What did the defendant do to obstruct his ingress and egress? It placed posts on its own right of way a year and a half after the city had vacated the crossing.

"When the alley was vacated by the ordinance, it was the same in legal contemplation as if it never had existed; as if it was a town lot, and not an alley." (*City of Belleville v. Hallowell,* 41 Kan. 192, 199, 21 Pac. 105.)

"The fee of the streets and alleys is in the public, and the legislature, which represents the public, and has unlimited control of the streets and alleys, may grant a privilege or franchise in them without providing for the payment of compensation. (*O. O. C. & C. G. Rld. Co. v. Larson,* 40 Kan. 301, 19 Pac. 661, 2 L. R. A. 59; 10 A. & E. Encycl. of La., 2d ed., 1133)." (*LaHarpe v. Gas Co.,* 69 Kan. 97, 105, 76 Pac. 448. See, also, *Wulf v. Kansas City,* 77 Kan. 358, 365, 94 Pac. 207; *City of Emporia v. Griffith,* 86 Kan. 976, 980, 122 Pac. 1053; *City of Winfield v. Court of Industrial Relations,* 111 Kan. 580, 583, 207 Pac. 813.)

We conclude that the planting of posts within the right of way across the street where the street crossing over the railroad tracks had regularly been vacated by city ordinance a year and a half prior thereto, is not in itself such a closing of the street crossing as to render the railway company liable to one complaining of being deprived of ingress and egress by the closing of the crossing. And, further, that a railway company is not liable in damages for the vacating and closing of a street crossing over its tracks where after the passing of such ordinance no change is made by the railway company on its right of way at or near such crossing, or near the plaintiff's property except to place posts or obstructions within its right of way to prevent traffic thereon agreeable to the provisions of the ordinance vacating the same.

No authorities were presented as to the application of the doctrine of joint tortfeasors to the questions involved in this case, and we do not regard it as applicable to the first subdivision of this appeal.

Finding, as we do, that the defendant did nothing in this case with reference to the closing of this crossing to render it liable for dam-

ages, it becomes unnecessary to consider the second topic as to the plaintiff being in a proper position to recover damages on account of the obstruction of which he complains.

The judgment is reversed, and the cause is remanded with directions to render judgment for defendant for costs.