No. 41,440

AMOS SMITH and VIOLA SMITH, his wife, *Appellees,* v. STATE HIGH-WAY COMMISSION OF KANSAS, *Appellant.*

(346 P. 2d 259)

Opinion

filed November 7, 1959.

*Charles J. Carroll,* of Topeka, argued the cause, and *W. B. Kirkpatrick,* Assistant Attorney General, *Jerry Ann Foster,* of Topeka, and *Robert E. Ferguson,* of Marysville, were with him on the brief for appellant.

*Harry A. Lanning,* of Seneca, argued the cause, and *William M. Drumm,* also of Seneca, was with him on the brief for appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This appeal arises from a proceeding in eminent domain by the State Highway Commission to (1) acquire an easement for a channel change and borrow, and simultaneously to (2) acquire rights of access along a limited portion of the landowners' frontage on an existing highway. The parties stipulated the amount of the appraisers' award for the easement was just compensation thereby leaving as the single issue in the trial court the restriction of access.

It is uncontroverted that the landowners had the same number of *entrances* to their premises after the condemnation of abutters' rights of access as they had prior to the condemnation.

The primary question is whether the State Highway Commission under the circumstances presented by the facts in this case may acquire abutters' rights of access to an existing highway by the exercise of state police power, or whether the State Highway Commission is obligated to acquire such rights of access by the exercise of its power of eminent domain pursuant to G. S. 1957 Supp., 68-

1903, and pay just compensation to the landowners for the taking.

To avoid any misinterpretation of the force and effect to be given the decision herein, a complete report of the factual situation presented by this appeal is deemed necessary.

Pursuant to a plan for the relocation and improvement of U. S. Highway No. 36 in Nemaha County, Kansas, the State Highway Commission (appellant) filed condemnation proceedings in the district court of said county on February 6, 1958. The landowners, Amos and Viola Smith (appellees) own land which fronts U. S. Highway No. 36 just west of the city limits of Seneca, Kansas, and from which a .26-acre easement and abutters' rights of access were acquired by the State Highway Commission.

The petition filed in the condemnation proceedings recites in part:

"2. That petitioner states that under and by virtue of Section 68-413, G. S. 1955 Supp. it has the right of eminent domain and is authorized to acquire right of way in compliance with G. S. 1949, 26-101, in the name of the State of Kansas for establishing, laying out, opening, constructing, maintaining, improving and draining the State Highway System.

"3. That under and by virtue of Section 68-1901 through Section 68-1906, G. S. 1955 Supp., the State Highway Commission has authority to establish controlled access facilities and to construct and maintain frontage roads and to acquire private and public property, *including the right of access for such controlled access facilities and frontage roads by condemnation proceedings.*

"4. That on the 28th day of August, 1957, the State Highway Commission in regular session found and determined that traffic conditions both present and future in Nemaha County, Kansas, justified and required the establishment of controlled access facilities, and that *it was therefore necessary to acquire the land hereinafter described as a controlled access facility,* and to acquire certain lots and parcels of land described herein for right of way and ordered that said lots and parcels of land *be acquired by the State Highway Commission in the name of the State of Kansas by exercise of the right of eminent domain as provided by Section 68-413, G. S. 1955 Supp.*

"5. That pursuant to said order the State Highway·Commission *desires to acquire in the name of the State of Kansas* certain lots and parcels of land situated in Nemaha County for highway purposes and *a controlled access facility with frontage roads and to design, establish, regulate, improve, construct and maintain a controlled access facility;* with said tracts being shown of record to be owned and subject to liens as hereinafter set out.

"6. Petitioner further alleges *it hereby ·desires to purchase or acquire by its condemnation proceeding* the right of way hereinafter described and *all of the rights to control the ingress and egress in and. to all such tracts designated."* (Emphasis added.)

The property taken from the landowners by the petition was described in Tract 29(a) and in Tract 29(b). The sketch set forth showing a portion of the quarter section of the landowners' property

AMOS SMITH

SOUTHEAST QUARTER SECTION 28-T2S-RI2E

EASEMENT = 0.26 ACRES

involved will serve to clarify the facts. Tract 29($a$) is a .26-acre easement for channel change and borrow and is indicated by diagonal hatch marks on the sketch. Tract 29 ($b$) was described as:

"Any abutter's rights of access to the highway over and across a line described as follows: BEGINNING at a point on the West line 30.0 feet North of the Southwest corner of the Southeast Quarter of Section 28, Township 2 South, Range 12 East; FIRST COURSE, THENCE EAST PARALLEL TO THE SOUTH LINE OF SAID QUARTER SECTION 1410 FEET. Except and reserving, however, unto owners of abutting land, their successors or assigns, the right of access to the highway for the purpose of an ENTRANCE over and across the following described course: . . ."

The exception is a 40-foot existing entrance from the highway shown on the sketch as the Fort Markley entrance. This 1410 feet, shown by the bracket on the sketch, is a portion of the north boundary line along the existing right of way of the State Highway Commission.

At this point it should be stated, referring to the sketch, the south frontage of the quarter section in controversy along existing U. S. Highway No. 36 is 2633 feet. The east portion of the existing highway, consisting of 1165 feet, will serve as a frontage road along a

portion of the landowners' property from which no rights of access were taken. The proposed relocation of the highway will be parallel with and approximately 75 feet south of the existing highway. The abutters' rights of access, with the exception of one 40-foot existing entrance, were taken from the west portion of the landowners' property to the extent of 1410 feet. Between the west entrance of the frontage road onto the highway and the east end of the 1410-foot line are 58 feet in which no rights of access were taken.

Appraisers were duly appointed by the district judge and made an appraisal. Their report, filed March 19, 1958, made an award to the Smiths as follows:

"29(a) Land Taken—0.26                                     $97.50

Total ............................................... $97.50
29(b) 1,410 feet Abutters Right of Access          685.00

Total ................................. ................ $782.50'"

Both parties appealed from the appraisers' award of $685 on Tract 29(b). At the trial the parties stipulated the appraisers' award of $97.50 for the easement, Tract 29(a), was just compensation and withdrew this issue from the jury.

On April 18, 1958, the Commission filed an instrument designated as "Condemner's Verified Estimate of Just Compensation" wherein the right of way engineer for the Commission stated that the just compensation to the landowners for Tracts 29 (a) and (b) should be $533.50. This included $97.50 for the easement. Thereafter, with the oral approval of the attorneys for the Commission this sum, having been paid into court, was distributed to the landowners.

The case was tried before a jury which heard all the evidence of the respective parties. The trial court instructed the jury the case arose over certain condemnation proceedings instituted by the State Highway Commission for the purpose of obtaining abutters' rights of access to U. S. Highway No. 36. The jury was instructed the only question involved was the damage suffered, if any, by the landowners as a result of the taking of the abutters' rights of access to the highway, and the jury was further instructed the burden of proof concerning the item of damages by reason of the taking of the abutters' rights of access was upon the landowners.

In answer to a special question the jury found the landowners had the same number of entrances to the land after the condemna-

tion as before the condemnation. The jury returned a verdict for the landowners in the sum of $5,000 as damages for the taking of the abutters' rights of access. Judgment was entered for the landowners in the sum of $5,097.50 with interest at 6% on the unpaid balance and costs. The State Highway Commission appeals from this judgment.

It must be observed we attach no legal significance to the fact that the State Highway Commission condemned an easement, Tract 29(*a*), in addition to abutters' rights of access, Tract 29(*b*), in the same condemnation proceeding. The easement is taken from a portion of the landowners' property served by the frontage road, and by stipulation the issue of just compensation for this tract was removed from the case. It is in no way related to the abutters' rights of access taken. Nor do we attach any legal significance to the fact that the landowners had as many entrances to the frontage road, from the portion of their property served by the frontage road, after the condemnation as they had before the condemnation.

The issue before the trial court and the jury was simply one concerning the acquisition of 1410 feet of the abutters' rights of access along an existing highway, and from which a 40-foot *existing entrance* was excepted and reserved to the landowners. The landowners had the same *"entrance"* to their property after the condemnation of abutters' rights of access as they had before the condemnation.

The State Highway Commission took the position throughout the trial of the case in the district court that it was not *acquiring* the landowners' rights of access by eminent domain, but that it had the right and authority in the interest of public safety *to regulate* access from the appellees' property to the highway by limiting access to the entrances then in existence under its "Regulations Governing Entrances to Highway from Private Property." Simply stated, the State Highway Commission contends it is *controlling or limiting* the access of the landowners by the exercise of the state's *police power.* Apparently the Commission contends the right to regulate the entrances to an existing highway under the police power includes the right to *wholly prohibit access without having to pay damages,* and by reason thereof, the Commission has the right to condemn and take all rights of access described in this proceeding without becoming liable to pay any damages as a result thereof.

Pursuant to this theory the State Highway Commission at the trial introduced its regulations in evidence and its witnesses were interrogated on the basis of these regulations. The trial court declined to rule the question of law presented by the conflicting theories between the parties until it instructed the jury. It then refused to instruct the jury on the theory of law propounded by the State Highway Commission.

This practice cannot be condoned. Parties are entitled to have the trial court's decision upon a definite theory of law. This theory should then govern the trial of the case and the admission of evidence. To try a case upon two conflicting theories tends to mislead and confuse a jury. It is apparent from the record here presented, however, with two diametrically opposed theories of law and two diametrically opposed lines of testimony, the jury was not confused. The landowners' witnesses on value all placed the damages either a little over or a little under $5,000, while each value witness for the State Highway Commission testified in his opinion *under the regulations* the state would not be liable for any damages. After being instructed by the trial court, the jury simply rejected the testimony of the witnesses for the State Highway Commission and disregarded the theory of law propounded throughout the trial by counsel for the Commission.

The owner of property which abuts an existing street or highway has two distinct kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the street or highway, and which are not common to the public generally. These private rights include certain easements, or appurtenant easements, such as the rights of access, of view, of light and air, and others. These rights are *property* of which he may not be deprived without his consent, except on full compensation and by due process of law.

It has consistently been held in this jurisdiction the right of access to and from an existing public street or highway is one of the incidents of ownership of land abutting thereon, sometimes called a common law right of access, which may not be taken from the owner by the public without just compensation. (*C. B. Milford,* 71 Kan. 331, 80 Pac. 633; *Longnecker v. Railroad Co.,* 80 Kan. 413, 102 Pac. 492; *Simmons v. State Highway Commission,*

178 Kan. 26, 283 P. 2d 392; *Atkinson v. State Highway Commission,* 184 Kan. 658, 339 P. 2d 334; and see, *Ruthstrom v. Peterson,* 72 Kan. 679, 83 Pac. 825; and G. S. 1957 Supp., 68-1903.)

Any curtailment of an abutter's rights of access was said in *Highbarger v. Milford,* supra, to be such a material abridgment of the vested and peculiar interests of the landowner as to be beyond the *constitutional power* of the legislature. The court further said the abutting owner of land "obtains the right to the use of such streets as are *reasonably necessary for the enjoyment of the land* so purchased by him." (p. 340.) (Emphasis added.)

The private rights of an abutting property owner on an existing street or highway are subordinate to the right of the public to proper use of the street or highway. Thus, the exercise of the rights of abutting owners is subject to *reasonable regulation and restriction* for the purpose of providing reasonably safe passage for the public, but regulations or limitations cannot be sustained which *unduly or unreasonably curtail or restrict* the rights of the abutting owner. (See, 25 Am. Jur., Highways, § 154, pp. 448, 449; and 39 C. J. S., Highways, § 141, pp. 1079, 1080.)

In *Simmons v. State Highway Commission,* supra, it was conceded that at the time of the condemnation the owner of property abutting an existing highway "had a common law right of access onto such highway at any point, subject to compliance with the lawful regulations pertaining to entrances promulgated by the commission." There, in 1953, the State Highway Commission instituted proceedings to condemn certain land, including all rights of access in and to such land as permitted by G. S. 1953 Supp., 68-1901, *et seq.,* in Saline County, Kansas. In addition to the strip of land taken along the highway, to improve the highway from two to four lanes, the landowner lost the right to use approximately 3780 feet of access she had previously possessed along the highway. The Commission moved to strike the testimony of certain witnesses who based their valuations upon elements which included the *taking of rights of access*—that the land fronting the highway prior to the condemnation had substantially higher value than the land immediately behind it. The trial court overruled the motion and this court affirmed saying:

". . . Where—as here—it is conceded the State Highway Commission is proceeding under provisions of the controlled access facilities statute (G. S. 1953 Supp. Chap. 68, Art. 19) with the avowed purpose of condemning the frontage portion of a tract of land possessing highway access rights without

restoring those rights to the land remaining in the tract we believe the rule announced in the case last cited [*Russell v. State Highway Comm.*, 147 Kan. 297, 77 P. 2d 199], where the land involved was deprived of no access rights whatsoever, has no application and it must be held the frontage land taken is worth more per acre than the remaining adjacent land without those rights . . . It necessarily follows evidence of the character of which appellant complains tended to establish one of the elements of damages subject to consideration in determining the value of the land taken from the two tracts in question and the trial court did not err in denying appellant's motion to strike such evidence from the record or in refusing to instruct the jury to disregard it." (pp. 30, 31.)

While the entire access of an abutting property owner on an existing highway may not be cut off, generally an owner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway. The use of the streets and highways may be regulated and restricted by the public authority in the exercise of the police power to the extent necessary to provide for and promote the safety, peace, health, morals and general welfare of the people. It is subject to such *reasonable and impartial regulations* adopted pursuant to this power as are calculated to secure to the general public the largest practical benefit from the enjoyment of the easement, and to provide for their safety while using it. (25 Am. Jur., Highways, §§ 253, 254, pp. 544, 545; and 40 C. J. S., Highways, § 232, p. 240.)

*Subject to constitutional limitations,* the state has absolute control over the streets and highways within its borders. (*State v. Atkin,* 64 Kan. 174, 67 Pac. 519, 97 Am. S. R. 343, affirmed *Atkin v. Kansas,* 191 U. S. 207, 24 S. Ct. 124, 48 L. Ed. 148.) Such power of supervision and control may be exercised directly by the legislature, or it may be delegated to a subordinate governmental agency.

The basic problem in every case involving impairment of the right of access is to reconcile the conflicting interests—*i. e.,* private v. public rights. The police power is the power of government to act in furtherance of the public good, either through legislation or by the exercise of any other legitimate means, in the promotion of the public health, safety, morals and general welfare, *without incurring liability* for the resulting injury to private individuals. (*Mugler v. Kansas,* 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205 and *Schaake v. Dolley,* 85 Kan. 598, 118 Pac. 80, 37 L. R. A. [n. s.] 877.) Eminent domain, on the other hand, is the power of the sovereign to take or damage private property for a public purpose *on payment of just*

compensation. (*Highbarger v. Milford*, supra; and *Simmons v. State Highway Commission*, supra.)

Since there is no doubt that the right of access, like any other property can be taken for public purpose under eminent domain upon payment of just compensation, the interesting question is how far the public can proceed under the police power. Determination of whether damages are compensable under eminent domain or noncompensable under the police power depends on the relative importance of the interests affected. The court must weigh the relative interests of the public and that of the individual, so as to arrive at a just balance in order that government will not be unduly restricted in the proper exercise of its functions for the public good, while at the same time giving due effect to the policy in the eminent domain clause of insuring the individual against an *unreasonable loss* occasioned by the exercise of governmental power.

It is well settled the limitation and regulation of *highway traffic* comes under the police power, and it makes no difference how or where any part of the traffic gained access to the road. The regulation of traffic without liability for the payment of compensation includes, among other things, prohibiting left turns, prescribing one-way traffic, prohibiting access or crossovers between separated traffic lanes, prohibiting or regulating parking, and restricting the speed, weight, size and character of vehicles allowed on certain highways.

Where does the police power end and the power of eminent domain begin? Some courts have attempted to generalize by declaring that the police power ends when the injury to the property owner in not being paid for his property is greater than the injury to the public in having to pay for the property. (See, The Limited-Access Highway, 27 Wash. L. Rev., pp. 111-129; and Freeways and the Rights of Abutting Owners, 3 Stanford L. Rev., pp. 298-311.)

It is clear in this jurisdiction the limitation, restriction or curtailment of an abutter's rights of access to an existing street or highway must be *reasonable* to be a valid exercise of the state police power. In *Atkinson v. State Highway Commission*, supra, an attempt was made by the State Highway Commission to restrict and control an abutter's rights of access by an exercise of the police power. The plaintiff's property was located on the southwest corner of a highway intersection and was improved and used as a gasoline filling station for motor vehicles. At all times the plaintiff had full and unrestricted access to and from the traveled portions of the high-

way and the intersecting street abutting his property. The plaintiff sought an order of the trial court permanently enjoining contemplated improvements, consisting of concrete curbing adjacent to portions of his property and a traffic control light, on the ground the Commission was depriving him of access necessary and essential to the full utilization and enjoyment of the property. The trial court after hearing all the evidence permanently enjoined the Commission from building the improvements and from doing any other act permanently limiting, lessening or interfering with the free, unlimited and direct access of the plaintiff and his customers to and from the station, unless and until the affected *property rights* (rights of access) of the plaintiff were acquired by the Commission by purchase or by condemnation proceedings. The Commission filed no motion for a new trial. Therefore, on appeal to this court, the only question was whether the judgment was supported by the pleadings and findings of fact. The trial court made no specific findings, and the general finding in favor of the plaintiff raised a presumption that the trial court found all facts necessary to support the judgment. Under these circumstances this court was entitled to assume the trial judge made findings most unfavorable to the Commission—that the *taking* of the abutter's rights of access by the Commission in the exercise of state police power *was unreasonable* and that the plaintiff did not have an adequate remedy at law. Upon the foregoing premise this court affirmed the judgment saying:

"The commission argues there must be an unreasonable, arbitrary, complete or some other equivalent *acquisition* of the rights of access, but the legislature, in its wisdom, did not see fit to put any limit on the amount of access required *to be taken* before the commission must resort to condemnation if it were not *acquired* by gift, devise or purchase. We think the statute means just what it says.

. . . . . . . . . . . . .

"To hold that the above section does not require the commission to compensate a landowner for *the taking of his rights of access* would be neither an ordinary nor a judicial interpretation of the statute." (pp. 663, 664.) (Emphasis added.)

Our determination of how far the State Highway Commission can proceed under the police power to curtail or restrict the rights of access of an abutting property owner is materially assisted by legislative enactments.

In the year 1947 the Supreme Court in *State, ex rel., v. State Highway Comm.*, 163 Kan. 187, 182 P. 2d 127, construed the provisions of

G. S. 1945 Supp., 68-413, which were enacted in 1929. This special state condemnation statute was held to confer upon the Commission a fee title to all land condemned as necessary for the purposes specified in the statute. The court there recognized that notwithstanding the far-reaching consequences where the state acquired a fee title, it was not the province or right of courts to determine the wisdom of legislation touching the public interest.

The legislature thereafter in the year 1951 amended the foregoing section of the statute, now appearing as G. S. 1957 Supp., 68-413, to limit the State Highway Commission in the acquisition of a right of way for state highway purposes by condemnation proceedings. It provides in part:

"That in all cases where condemnation proceedings are instituted to acquire right of way for state highway purposes . . . . *the state highway commission shall not acquire any right or interest in land other than an easement . . .*" (Emphasis added.)

With certain exceptions where buildings or improvements are to be constructed, the Commission is permitted to acquire no other interests in land taken for state highway purposes under this section of the statute. (See also, G. S. 1957 Supp., 68-413a, and *Sutton v. Frazier,* 183 Kan. 33, 325 P. 2d 338.)

Prior to 1953 the State Highway Commission had no authority to acquire controlled access facilities. In that year the legislature enacted the controlled access facilities statute, Chapter 68, Article 19, (G. S. 1957 Supp., 68-1901 to 1906, incl.) which authorized the establishment and acquisition of controlled access facilities by highway authorities in this state.

G. S. 1957 Supp., 68-1901(*a*) defines a "controlled access facility" as:

". . . a highway, road or street especially designed to expedite and control through and local traffic, and over, from or to which highway, road or street, owners or occupants of abutting property shall have only a *controlled right of easement of access,* light, air or view . . ." (Emphasis added.)

G. S. 1957 Supp., 68-1901(*c*) defines a "frontage road" as:

". . . a highway, road or street which is auxiliary to and located on the side of another highway, road or street for service to abutting property and adjacent areas and for *control of access* to such other highway, road or street." (Emphasis added.)

The provisions of G. S. 1957 Supp., 68-1902, authorize the state, county or city highway authorities, acting alone, or cooperating with each other or with any federal, state or local authority, or any other

state, to establish, regulate and maintain, among other things, controlled access facilities whenever such highway authorities determine that traffic conditions, present or future, justify such facilities. The highway authorities are further authorized to so *regulate, restrict or prohibit access* to a controlled access facility so as to best serve the traffic for which such facility is intended.

G. S. 1957 Supp., 68-1903, provides for the acquisition of property and property rights as follows:

"The highway authorities, jointly or severally, may *acquire the desired private or public property, including rights of access,* light, air or view *for controlled access facilities, by gift, devise, purchase or condemnation,* in the same manner as now or hereafter authorized by law for acquiring property or property rights in connection with highways, roads and streets within their respective jurisdictions." (Emphasis added.)

G. S. 1957 Supp. 68-1904, authorizes highway authorities to designate and establish controlled access highway as new and additional facilities or to include an existing street or highway within such facility.

The provisions of G. S. 1957 Supp., 68-1905, authorize the establishment, construction and regulation, among other things, of frontage roads and the highway authorities are granted the same jurisdiction over frontage roads as is authorized over controlled access facilities under the act.

We think it clear that the legislature by enacting the controlled access facilities statute has spoken on the subject of controlled access highways. By the provisions of 68-1903, *supra,* it has prescribed the *exclusive* methods by which private or public property, including rights of access, may be *acquired* for the establishment of controlled access facilities—that is, "by gift, devise, purchase or *condemnation, in the same manner as now or hereafter authorized by law for acquiring property or property rights."* (Emphasis added.) The legislature intended by 68-1903, *supra,* that a landowner deprived of abutters' rights of access would be compensated for them.

The Commission argues that it is not obligated to acquire rights of access by eminent domain or as otherwise provided in 68-1903, *supra,* because this section of the statute uses the word "may" with reference to the acquisition of the desired private or public property. This expression merely indicates that the highway authorities are not required to establish controlled access highways, but, if they do so, they may be acquired only as provided in the act. The provisions in 68-1902, *supra,* which authorize the highway authorities

to so regulate, restrict or prohibit access to a controlled access facility so as to best serve the traffic for which such facility is intended, presupposes that the controlled access facility has already been established pursuant to the act and that the necessary property rights have been acquired. The foregoing interpretation of the controlled access facilities statute is in substance what was said and held in prior decisions concerning the act. (*Simmons v. State Highway Commission,* supra; *Franks v. State Highway Commission,* 182 Kan. 131, 319 P. 2d 535; *Atkinson v. State Highway Commission,* supra; and it represents the opinion of a majority of the members of the court in *Riddle v. State Highway Commission,* 184 Kan. 603, 339 P. 2d 301, although it should be observed the opinion written for the court does not completely represent the opinion of any single member of the court.)

In the *Franks* case the landowners filed an injunction action against the State Highway Commission. The Commission had previously condemned a right of way in 1951 over property of the landowners for the purpose of *relocating* U. S. Highway No. 24 prior to authorization by the state legislature of the acquisition of controlled access facilities. Thereafter, and prior to the construction of the new highway thereon, where no previous highway existed, the Commission in 1956 sought by condemnation to acquire the rights of access to the land previously taken and to acquire an additional right of way consisting of .078 of an acre of plaintiffs' land. This subsequent condemnation proceeding was abandoned as to the plaintiff landowners. Thereafter the Commission, pursuant to its resolution designating the new highway as a controlled access facility, proceeded with the construction of the new highway as a controlled access facility taking plaintiffs' right of access, presumably on the theory it was acquiring the rights of access by an exercise of the police power. The action came to this court on appeal from an order overruling the Commission's demurrer to the petition. In affirming the trial court by a unanimous decision this court said:

"The allegations of the petition make it appear that if an injunction were refused, the commission, without condemnation, could limit and control plaintiffs' previous access to what is now a controlled access facility. *This involves a vital property right.* (25 Am. Jur., Highways, § 154, p. 448; 39 C. J. S., Highways, § 141, p. 1081.) Such exigencies may later compel the trial court to deny the injunction because it would inflict great injury upon the commission and its power of eminent domain and would adversely affect the public interest. *In lieu of a decree to enjoin, the court could award damages to plaintiffs as*

*compensation* (*Provident Mut. Life Ins. Co. v. State Highway Comm.*, 155 Kan. 351, 355, 125 P. 2d 346) *by reason of the controlled access facility and its effect on plaintiffs' right of access to and from their property.*" (p. 137.) (Emphasis added.)

Perhaps the fallacy in the Commission's argument can best be illustrated by resort to the procedure open to a landowner where the state police power is exercised under the Commission's "Regulations Governing Entrances to Highway from Private Property." This procedure was the subject of testimony by a resident engineer for the State Highway Commission.

In the absence of the acquisition of an abutting property owner's right of access to an existing highway by eminent domain proceedings, or as otherwise provided in 68-1903, *supra,* the abutting property owner desiring an additional entrance, not existing at the time the right of way for the proposed new highway is acquired or not made necessary because of the proposed new highway improvement at the time the right of way for the new improvement is acquired, must make a request by application on a regular permit form provided by the Commission through proper channels to the Commission or its duly authorized division agent. If the request for a permit is denied, the property owner may resort to the courts to litigate the question whether his right of access to the highway which is *reasonably necessary* for the enjoyment of the land has been unduly or unreasonably curtailed or restricted.

The Commission argues under the police power it may limit access from the abutting property on the highway to the entrances then in existence. While the entrances in existence and used by an abutting property owner may be sufficient for the *present* and be all that are reasonably necessary for the enjoyment of the land, the Commission's argument fails to take into consideration *future* needs. With the advance in time land uses change, as well as other circumstances, which might affect the need for additional entrances to the land. And if in the future additional entrances are unreasonably denied by the Commission, the courts are still open to determine the question.

But, if the Commission *acquires* the rights of access of an abutting property owner on an existing highway, pursuant to 68-1903, *supra,* the Commission has *absolute control* and may prohibit, at will, any further entrances to the portion of the land along which access rights have been *acquired.*

The need of an abutting property owner on an existing highway for additional entrances *in the future* is vitally material, since the question is interwoven with the present value of the land abutting the highway based upon a consideration of all of the capabilities of the property for its best and most advantageous uses as it is actually situated at the time of the taking. It is therefore obvious the taking of an abutting property owner's rights of access on an existing highway will affect the value of the land from which access rights are taken. The extent to which the value is affected will vary with the facts and circumstances of each case.

The amount which the state will have to pay in an eminent domain proceeding for the acquisition of rights of access is determined by considering the market value of the property before the access right is taken and after it is taken. The difference in value is the damage for the loss of access rights.

The Commission complains of the jury's verdict as being excessive. Having placed all its "eggs in one basket" at the trial, so to speak, by attempting to show the landowners had no damage on the Commission's theory of the law, the testimony of the value witnesses for the landowners remained unchallenged when the case was finally submitted to the jury. Resort to the facts will show the landowners established commercial value for their property prior to the condemnation.

Facts which are not controverted by the evidence disclose the southeast corner of the quarter section of land in controversy is identical with the northwest corner of the city of Seneca. The Smiths owned this quarter section less a tract in the northeast corner thereof used for cemetery purposes, and less a 3-acre tract in the southeast corner owned by, and operated as, Gockel Lumber Yard. This 3-acre tract extended north from the section line a distance of 268.7 feet and west a distance of approximately 468 feet. North of the Gockel Lumber Yard are Commodity Credit Corporation grain bins. The Smiths had leased, with option to purchase, a 1-acre tract west of the lumber yard to Sanders Ford Motor Company for commercial purposes, and this tract also extended 268.7 feet north from the section line.

All witnesses who testified concerning the highest and best use to which the land could be adapted testified that a strip of land 268.7 feet in width from the section line, lying to the north of the existing highway for the distance of the 1410 feet along the existing

right of way where abutters' rights of access were taken, was suitable for platting into 1-acre tracts for commercial purposes. The evidence was that property fronting the highway east of the city of Seneca was not suitable for commercial development due to a drainage problem and no other property fronting the highway near the city was available to the west along the highway.

Across the road to the south of the Smith land was a quarter section owned by the city of Seneca, acquired for an airport and other purposes, and directly south across the road from the 1410-foot strip was the Seneca golf course. Immediately west of the city quarter on the south side of U. S. Highway No. 36 was a "truck stop," a commercial enterprise.

In fact, in the entire eminent domain proceeding designed to improve U. S. Highway No. 36 in the vicinity of Seneca it was only on the Smith property that the State Highway Commission condemned abutters' rights of access. This action in the wisdom of the State Highway Commission was, no doubt, taken in anticipation of future commercial development on the Smith property. It cannot be denied on the basis of the record here presented the landowners established commercial value for their property before the taking of the abutters' rights of access.

Complaint is made by the Commission that values of the land in controversy were limited to a strip 268.7 feet from the section line along the highway. No objection was made concerning this limitation at the trial and it is too late for counsel to raise the objection on appeal. (See, *Simmons v. State Highway Commission,* supra.)

While all of the instructions given by the trial court to the jury have not been abstracted, the record does not indicate the trial court erred in any of the instructions given or that it erred in refusing to instruct the jury on the Commission's police power theory of the law. The instructions requested by the Commission upon the facts and circumstances presented by the record in this case were immaterial.

The State Highway Commission filed a petition in eminent domain seeking to *acquire* rights of access thereby. Upon the docketing of the action this petition became the jurisdictional instrument upon which the trial was conducted. (See, *Sutton v. Frazier,* supra, and cases cited therein.) It is apparent from the petition the Commission elected *to acquire* by eminent domain the abutting landowners' rights of access. Upon the date of the *taking* the Commis-

sion had absolute power to control the access of the appellees, and their successors in title to the 1410 feet of access acquired with the exception of the 40-foot Fort Markley entrance reserved to the appellees.

This opinion has been written in direct answer to the basic contention of the State Highway Commission that it has the power to *acquire* rights of access of an abutting property owner on an existing highway by an exercise of state police power and do it simultaneously in an eminent domain proceeding without incurring liability for damages to the property owner. To avoid clouding the issue on this point it has been assumed the appeal in the eminent domain proceeding to the district court by the parties brings in its entirety the sufficiency of the award to the district court (*Moore v. Kansas Turnpike Authority*, 181 Kan. 840, 317 P. 2d 384) and permits the State Highway Commission to raise any question concerning the award. It has further been assumed concerning the above issue that the conduct of counsel for the Commission, heretofore related, does not operate as an estoppel against the Commission or as a waiver of any of its rights (See, *State, ex rel., v. Wheat Farming Co.,* 137 Kan. 697, 715, 22 P. 2d 1093; *Kucera v. State,* 160 Kan. 624, 164 P. 2d 115, and cases cited in these opinions), although this assumption should not be construed as a decision on the question. While courts in the past have generally held the doctrine of equitable estoppel does not apply to the government, it should be noted the government is estopped by agreements, stipulations, concessions, failures to object, failures to file a motion for a new trial, and representations made by its attorneys in the course of litigation. (See, *Atkinson v. State Highway Commission,* supra; *Fleming v. Brownfield,* 47 Wash. 2d 857, 864, 865, 290 P. 2d 993, 998; and *United States v. Star Const. Co.,* [1951, C. C. A. 10], 186 F. 2d 666.)

The petition filed by the State Highway Commission in the eminent domain proceeding, presently before the court in the action pending, complied strictly with the legislative mandates of the controlled access facilities statute, and particularly 68-1903, *supra,* for the *acquisition* of abutters' rights of access on an existing highway. On the date of the taking the Commission *fully acquired* the abutters' rights of access described in the petition and was thereafter empowered to regulate, restrict or prohibit access to the highway as a controlled access facility pursuant to 68-1902, *supra.* By the same token, the Commission obligated itself to pay for the rights

of access *taken.* We find no reversible error in the record of the trial.

The judgment of the trial court is affirmed.

FATZER, J. dissenting: In my opinion this case has not been correctly decided and I must respectfully dissent. Within the time permitted, I shall note briefly some of my objections to the court's affirmance of the judgment.

It seems to me there are three basic questions involved in this appeal. The first is, what is the right of access of an abutting landowner to an existing street or highway; second, the extent and limits of that right as applied to the facts and circumstances of this case; and third, the manner of curtailing the right of access, and the damages, if any, which flow from a taking or a restriction thereof.

The majority opinion purports to define the nature of the right of access of an abutting landowner in both the syllabus and in the body of the opinion. I am in accord with the court's opinion that the right of access in and to a street or highway attaches to abutting lands which is a property right and cannot be taken for public use without just compensation. But, the bald statement of the nature of the right does not define the extent and limits of that right. This is a first prerequisite to a correct decision of this case.

Recognized authorities state that, among other things, the right of access includes the right to use the street and highway as an outlet from the abutting property to a connecting highway by any mode of travel or conveyance appropriate to a highway, that is, the right of ingress and egress from the property which abuts upon an existing street or highway, thus enabling the owner to enter and leave his premises by way of the public highway and establishes the accessibility of his premises for his patrons, clients and customers; also, the right to use the street in front of the property in connection with the use and enjoyment of it in such manner as is customary and reasonable. In other words, the right of access is an "easement appurtenant" which is justified upon the grounds of necessity *and is such as is reasonably necessary for the enjoyment of the land for all purposes for which it is adapted.* (*Highbarger v. Milford,* 71 Kan. 331, 80 Pac. 633; *Longnecker v. Railroad Co.,* 80 Rev. pp. 115-123; Lewis, Eminent Domain, 190 [3d ed.]; 25 Am. Jur., Highways, § 154, p. 448; 39 C. J. S., Highways, § 141, pp. 1079-

1083.) While entire access may not be cut off, if the landowner has free and convenient access to his property and to the improvements thereon, and his means of ingress and egress are not *substantially* interferred with by the public, he has no complaint (39 C. J. S., Highways, § 141, p. 1081). The syllabus and corresponding portion of the majority opinion recognize this principle and correctly state the well-accepted rule that an abutting owner is not entitled to access to his land at all points between the property and the street and highway, and that the use of the street and highway may be restricted by the public authority (in this case by the State Highway Commission acting pursuant to G. S. 1957 Supp., 68-1902), in the exercise of the police power *whenever necessary* to promote the safety, peace, health and general welfare of the people; further, that whether damages for restricting the right of access are compensable under eminent domain or noncompensable under the police power depends upon the relative importance of the interests affected, and that courts must weigh the relative interests of the public and the individual and strike a just balance so that government will not be unduly restricted in its functions for the public good, while at the same time, give due effect to the policy of eminent domain to insure the individual against an *unreasonable loss* occasioned by the exercise of police power. This holding accords with that expressed by Mr. Justice Holmes in *Penna. Coal Co. v. Mahon,* 260 U. S. 393, 67 L. Ed. 322, 43 S. Ct. 158, and quoted in my dissenting opinion in *Atkinson v. State Highway Commission,* 184 Kan. 658, 666, 339 P. 2d 334. In the decision referred to Mr. Justice Holmes said:

"Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process clauses are gone. *One fact for consideration in determining such limits is the extent of the diminution.* When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts. *The greatest weight is given to the judgment of the legislature, but it always is open to interested parties to contend that the legislaure has gone beyond its constitutional power.*

. . .

". . . *As we have said, this a question of degree—and therefore cannot be disposed of by general propositions.* . . ." (pp. 413, 416.) (Emphasis supplied.)

As indicated by a map in the appellant's abstract, the appellees were the owners of the entire south half of Section 28, Township 2 South, Range 12 East, excepting 40 acres in the northwest corner of the southwest quarter, the cemetery tract, and the three-acre tract owned by Gockel Lumber Company. As the court's opinion indicates, the right of access on the west half of the south boundary of the southeast quarter was restricted for 1410 feet except the 40 foot "Fort Markley" access connection which was not disturbed. To the west of that point, and on the south boundary of the southwest quarter, the appellees have two houses with access connection to each, giving them unrestricted access to U. S. Highway 36 at both points. In addition to those three unrestricted access connections to U. S. Highway 36, the landowners were provided a new and fourth access connection at a point on the south boundary of the southeast quarter where the frontage road curved east to serve the lumber yard.

Thus, the landowners were left in a better position, with respect to access connections, than they were prior to the commencement of the condemnation proceedings. They still had their property with unrestricted access, and even with restricted access affecting the 1410 feet *they were provided with one more access connection than they previously had.* At this point it is important to note that, although the landowners were claiming a great loss by reason of the restriction of the right of access, Mr. Smith testified that he did not need nor want the new access connection.

"A. I don't need it.
"Q. You don't need it?
"A. No, you can cross the ditch anywhere with a car or automobile or truck, I don't know why they put in a third entrance there.
"Q. In other words you don't think it adds any to the value of that property?
"A. I didn't need it."

In view of these facts and circumstances can it be said that the landowners have been denied reasonable access to and from the public highway? In weighing the relative interests of the public and that of the landowners so as to strike a just balance between the police power of the state exercised by the Commission pursuant to G. S. 1957 Supp. 68-1902 when it determined that the portion of U. S. Highway 36 in question should be a controlled access facility, and the effect to be given to the policy of eminent domain to insure the landowners against an *unreasonable loss* occasioned by an *unreasonable denial of access,* can it be said they have been

subjected to such a loss as a result of the Commission's action and the proceedings in question? In my opinion these questions must be answered in the negative.

Yet, while conceding that the landowners are not entitled, as against the public, *to access to their lands at all points between it and U. S. Highway 36,* the court has approved an award of damages in the amount of $5000 in eminent domain for restricting the right of access to the 1410 feet *on the very boundary line that it holds the landowners do not have access at all points between it and the highway.* Thus, it would appear the court is approving an award of damages for the deprivation of a right *to which it says the landowners are not entitled!*

I agree with the court's opinion that there are two methods by which the right of access may be restricted or impaired—the police power and the power of eminent domain. Under the former, damages resulting to property are not compensable, while under the latter, the power to *take* private property for a public purpose requires payment of just compensation. When the Commission converts an existing highway into a controlled access facility pursuant to G. S. 1957 Supp., 68-1902, and restricts or prohibits access thereto, abutting owners suffer injuries in varying degrees. But, it does not follow that the state is responsible for every result that may ensue (1 Elliott, Roads and Streets, § 298, p. 359). If the restriction of the right of access under the police power does not substantially interfere with ingress and egress to and from the property, injuries sustained by the owner are not compensable. In the case of *K. N. & D. Rly. Co. v. Cuykendall,* 42 Kan. 234, 21 Pac. 1051, it was said:

"The rule to be deduced from these cases, and from what has been said by the court in the cases of *C. B. Rld. Co. v. Twine,* 23 Kas. 585; *K. C. & O. Rld. Co. v. Hicks,* 30 id. 288; and *Heller v. A. T. & S. F. Rld. Co.,* 28 id. 625, is that in order to justify a recovery for damages by the abutting lot-owner, there must be such a practical obstruction of the street in front of the lots that the owner is denied ingress to and egress from them." (l. c. 236.)

See *Venard v. Cross,* 8 Kan. 248, 254, 255; *C. B. U. P. Rld. Co. v. Andrews,* 30 Kan. 590, 593, 594, 596, 597, 2 Pac. 677; *L. N. & S. Rly. Co. v. Curtan,* 51 Kan. 432, 438, 439, 33 Pac. 297; *Longnecker v. Railroad Co.,* 80 Kan. 413, 420, 423, 102 Pac. 492; *Highbarger v. Milford,* 71 Kan. 331, 80 Pac. 633. See, also, *Sample v. Jefferson County,* 108 Kan. 498, 196 Pac. 440; *Foster v. City of Topeka,* 112 Kan. 253, 210 Pac. 341; *Gantz v. Jefferson County Comm'rs,* 129 Kan. 66, 282 Pac. 265; and *Banister v. Atchison T. & S. F. Rly. Co.,* 129 Kan. 302,

282 Pac. 751. Where, however, the circumstances are such that the right of access may not be restricted under the police power, a taking of the right must be accomplished under eminent domain with payment of adequate compensation. The question of what circumstances require invoking eminent domain is one of degree and cannot be disposed of by general proposition; the question depends upon the particular facts. Obviously, if there is a total blocking of access, the owner is entitled to compensation since that restriction, upon its face, would be unreasonable and the right must be taken by eminent domain. On the other hand, where the restriction does not *substantially interfere* with the owner's ingress and egress to and from his property, as in the present case, injuries suffered by the abutting owner are not compensable. These are values enjoyed under an implied limitation and must yield to the police power.

Much more could be said but time does not permit. There are one or two other points, however, which deserve attention.

The determination of how far the Commission can proceed under the police power in restricting the right of access is in no wise affected by statutory enactments prescribing the nature or quantity of title acquired in condemning a right of way for highway purposes. Reference is made in the court's opinion to section 68-413, and that the Commission only acquires an easement for right of way purposes. That is true, but the right of access of an abutting owner is not dependent upon the quantum of title acquired by the condemner, nor is it material in determining whether the Commission, under the facts of a particular case, or for that matter, under the facts of the case at bar, may restrict the right of access by the lawful exercise of the police power under section 68-1902. Whether the title of the right of way is in fee simple or merely an easement is immaterial.

In my opinion, the construction placed upon sections 68-1902 and 68-1903 by the court's opinion is restrictive and does not accord with the legislative intent. It is said that section 68-1903 provides the *exclusive* method by which the right of access may be acquired for the establishment of a controlled access facility and that "The legislature intended by 68-1903, *supra,* that a landowner deprived of abutters' rights of access would be compensated for them." This appears to be inconsistent with what is said and held with respect to whether damages are compensable under eminent domain or non-

compensable under the police power and that the determination of the question is dependent upon whether the relative importance of the interests affected, with the conclusion that courts must weigh the relative interests of the public and the individual in order that government may properly function and the individual guarded against unreasonable loss.

The conclusion of the court quoted above is based upon the erroneous premise that section 68-1902, providing for the establishment of a controlled access facility and authorizing highway authorities to regulate, restrict or prohibit access thereto, *presupposes* a controlled access facility has already been established pursuant to the act and that necessary property rights have been acquired. In my judgment, section 68-1902 contemplates that, and practical application of it requires, highway authorities proceed in just the reverse order. It is the highway authorities who, *in the first instance,* determine under the section whether a controlled access facility will be established, and, if it is, whether access thereto will be regulated, restricted or prohibited by the same resolution which establishes the facility. This occurs long prior to the commencement of proceedings in eminent domain to acquire property rights such as the right of way, borrow pits, etc., necessary for the construction of the controlled access facility. As the court's opinion is presently written, the right of highway authorities under section 68-1902, to regulate, restrict or prohibit access to a controlled access facility when such facility is established, is construed to a nullity.

For this and other reasons, I would reverse the judgment.